## JOHNSON *v.* JACKSON.

MASTER AND SERVANT—DEFECTIVE APPLIANCES—NEGLIGENCE.

> Where a safety device, used to hold the lever which operated a saw carriage, had been employed for six years without accident, and plaintiff's decedent was injured because the clamp in some conjectural manner became detached and permitted the carriage to start, fatally injuring decedent, there was not sufficient evidence of negligence to submit the case to the jury.

Error to Emmet; Shepherd, J. Submitted December 15, 1911. (Docket No. 141.) Decided December 29, 1911.

Case by Andrew Johnson, administrator of the estate of August Johnson, deceased, against Willis K. Jackson, surviving partner of the firm of Tindle and Jackson, for the unlawful killing of plaintiff's decedent. Judgment for plaintiff. Defendant brings error. Reversed.

*Keena, Lightner & Oxtoby* ( *Charles E. Ward,* of counsel ), for appellant.

*C. S. Reilley* ( *Frost & Sprague,* of counsel ), for appellee.

OSTRANDER, C. J. Plaintiff's decedent, 53 years of age, was employed in a sawmill. He was injured January 13, 1910, while engaged in removing a swinging door or casing which covered the band saw on the side next to the carriage track; that being a part of the operation of changing saws. For this purpose the mill was stopped. When he was injured, deceased was standing on the track of the log carriage, his back to the carriage, holding the door he was taking down with one hand, and reaching up for a strap used to fasten it in the desired position. The log carriage was discovered in motion. An employé, who

was near the lever used to operate the log carriage, found it out of place, and endeavored by its use to stop the carriage.  He was too late, even if he properly used the lever (which he himself doubts), and deceased was pushed against the idle saw, and fatally injured.  How the carriage was set in motion is, according to plaintiff, a question of probabilities, and, according to defendant, matter of conjecture only.

It is the theory of the plaintiff that plaintiff's decedent himself unconsciously set the carriage in motion.  It is contended that an arrangement and maintenance of appliances which permitted this rendered the place in which plaintiff was called upon to work an unsafe place, for the condition of which, and of the consequences resulting to plaintiff's decedent, the employer is liable.  The testimony for the plaintiff tended to prove that when the mill was in motion the head sawyer stood in a gangway near the car track and near the enclosed band saw; on one side of him, and operated with one hand, was the lever controlling to some extent the positions of the log on the carriage, and on the other side, operated with the other (the right) hand, was the lever controlling the movements of the log carriage.  When the last mentioned lever was in a vertical position, the carriage could not be moved.  As the lever was moved one way or the other from the vertical, the carriage moved to and away from the saw.  It was $11\frac{1}{8}$ inches from the stationary saw frame, and from 16 to 24 inches from the carriage track—nearer 24 inches, the head sawyer testified.  To hold the lever vertically, a clip or clamp of iron or steel, open on one side, was provided, which fitted upon the lever and upon a stationary vertical standard, running up some 18 inches above the floor, thus holding the lever to the standard.  Both the lever and the standard were iron or steel.  A string or strip of leather was fastened to the clip and also to the saw frame at a point somewhat higher than where the clip, when in use, engaged the lever and the standard.  When not in use, the clip hung conveniently from the

string. It is the theory of the plaintiff that deceased, while holding and lifting the movable door or casing, stood upon one foot, and that his other foot, raised from the floor by his exertions, hit the string and removed the clip from the lever, the lever was tipped out of position, and the carriage set in motion.

The court having refused to instruct the jury that no negligence of the defendant had been proven, having refused, also, to instruct them that there was no proof that the injury was caused because of the string being attached to the clip, and having further refused to instruct that it was no more probable that the injury occurred because the deceased kicked the string or the clip than that it happened in some other way, we have been obliged to give, and have given, very careful consideration to the record, which contains the substance of all the testimony given at the trial.

So far as the clip itself is concerned, and the manner in which it engaged the lever and the standard, making the lever rigid, there is no competent testimony tending to prove that it was an unsafe device. Some testimony was introduced tending to prove that it would have been safer, so far as the danger of its being kicked off is concerned, if a pin or other device had been placed above it after it was in position; and there was testimony to the effect that if both the standard and the lever had been bored with holes, so that the lever could be held in position by a pin passing through the standard and the lever, there would have been less danger of its accidental removal. One can conceive of many ways of securing the lever, most of them inconvenient and unnecessarily wasteful of time. But the device which was in use did not consist of the clip only, but of the clip and the leather string, and when the clip was in position, holding the lever, the string passed across the 11-inch space between the standard and the saw frame to which the string was fastened. This space was not a passageway in any proper sense of the term, and there is no testimony tending to prove that it was used as a pass-

ageway, although counsel for the plaintiff used the word in framing certain questions put to witnesses. The employé whose duties placed him near the clip and the string was the head sawyer, who operated the levers. It was his duty to use and remove the clip. The only other persons whose duties called them to the immediate vicinity of this string were the men who helped in the changing of the saws and in removing the door or casing about the band saw. One of them, by the use of a lever, released the tension upon the band saw. The other did what plaintiff's decedent was doing upon the occasion in question. The door or casing, the position of which he altered, was the one next the carriage track, which had to be swung down and outward across the track, and then lifted up and in, and fastened in position—a series of movements which were reversed, after the saws had been changed, to put the door or casing back into its original position.

The head sawyer, a man somewhat taller than plaintiff's decedent, testified that in doing this it was customary to put one foot on the right-hand or east rail of the carriage track, while facing to the north and east. The head sawyer testified that he placed the clip in position when he stopped the carriage. Another witness testified that after the injury occurred the clip was found disengaged, hanging from its string. In connection with this testimony, we have read those portions of the record which explain how plaintiff's decedent, or any one engaged in the same work, would stand in doing the work, and his proximity to the lever and the string, as well as the nature of the injury which he received. His right leg was torn or cut off at the hip.

It seems to be just as probable that the head sawyer was mistaken, honestly, of course, in supposing that he had securely locked the lever with the clip before he left it, or that the other employé, who was assisting at the work in hand with a lever, in some way disengaged the clip, or that in some manner steam had entered the cylinder controlled by the lever, as that plaintiff's decedent, stand-

ing two feet or more away from the string and lever, exerting himself in supporting and handling the casing or door on the west side of the band saw, lifted his foot or leg against the string, and forced the clip from its position. One may speculate about the matter, but the record affords no basis for doing anything more. The same clip and string appear to have been in use in this mill for six years, which is the length of time that the mill has been running. It was the only device ever provided for holding the lever in a stationary position. The band saws were changed usually four times daily, sometimes oftener. Upon each of these occasions, at least three men, and, as we understand the record, four men, employed themselves in some way with the labor connected with changing the saws. Substantially the same thing was required to be done over and over upon each of these occasions, and the man who did what plaintiff's decedent did upon the occasion in question, did the same thing each time, and, as is made evident by the record, occupied substantially the same position each time.

It appears that on one previous occasion, some four years earlier, the carriage, supposed to be stationary, was found to be in motion, and was stopped by the use of the lever. We are satisfied that the record will not bear the construction that it was ever started but once, except upon the occasion in question. While several witnesses testified to an occasion when they say the carriage moved without the voluntary action of some one at the lever, they evidently refer to the same occasion. Upon that occasion, according to the testimony of the head sawyer, the clip was knocked off the lever in the operation of taking the saw down from the wheel. Another witness, describing the same occurrence, thinks that the clip was placed upon the lever wrong side up, which was the occasion for the starting of the carriage, and a third witness, who describes an occasion when the carriage started, and who agrees with the head sawyer with respect to the time of the occurrence, says that the clip was off the standard,

and he could not tell whether it had been put on before the carriage started or not. One of these witnesses testified that upon one occasion he knocked the clip off himself, and put it back, and in explanation he says that a lever, used to let the strain off the saw, was laid on the floor directly under this string, and had become covered up with sawdust, so that when the witness reached down to get it and lift it from the floor the end of it caught the string and knocked the clip off.

Assuming that we are right about this, it appears that in the course of six years no one doing the work that plaintiff's decedent was doing upon the occasion in question had ever reached or touched the string or dislodged the clip, and that no one employed about the mill had ever unconsciously removed it. In this connection, there are other undisputed facts to be considered. Plaintiff's decedent was not a stranger in the mill. He had been employed there for a number of years, and had frequently performed the work he was doing when he was injured. The natural, if not the necessary, inference to be drawn from the testimony is that he and the other men employed about the saw and log carriage knew about the appliance used to keep the lever in a vertical position. This knowledge, possessed by a man who was ordinarily prudent, would tend to prevent movements, especially unnecessary movements, likely to disturb the lever. Assuming it to have been possible for plaintiff's decedent, while in the performance of his duty, to unconsciously lift the string sufficiently to release the clip and the lever, it does not necessarily follow that defendant was negligent in supplying and in using the appliance. Defendant's duty in the premises is to be measured by probabilities, not by the possibility that the lever could be released in the manner suggested by counsel, but by the probabilities that any employé in the performance of duty in the place in question would ever in such a way release the clip and the lever.

. " The fact of injury and the possibility of guarding against it do not necessarily make out a case of culpable negligence: very few acts in life are done with such care to prevent accidents as would have been possible; and the law only requires of any one that degree of care and prudence which persons who are reasonably careful ordinarily observe." *Schroeder* v. *Car Co.*, 56 Mich. 132, 134 (22 N. W. 220, 221).

See, also, *Richards* v. *Rough*, 53 Mich. 212 (18 N. W. 785); *Sjogren* v. *Hall*, 53 Mich. 274, 277 (18 N. W. 812); *Hewitt* v. *Railroad Co.*, 67 Mich. 61, 72 (34 N. W. 659).

We reach the conclusion that the testimony wholly fails to prove the negligence of defendant alleged in the declaration, and that the judgment must therefore be reversed. Being of this opinion, we find it unnecessary to consider other questions presented in the briefs.

Judgment reversed, saving to plaintiff the right, if he shall be so advised, to a new trial.

STEERE, BROOKE, BLAIR, and STONE, JJ., concurred.