JOE RUSSO, APPELLANT, V. SWIFT & COMPANY, APPELLEE.
286 N. W. 291

FILED JUNE 2, 1939.   No. 30576.

*Paul J. Garrotto* and *Samuel P. Caniglia,* for appellant.

*Rosewater, Mecham, Shackelford & Stoehr* and *A. L. Knabe, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

MESSMORE, J.

Plaintiff, a resident of Omaha, Nebraska, entered the employ of the defendant corporation in its Omaha plant in April, 1925. His duties were those of a beef washer. He continued in such employment until the month of December, 1935, when he became totally and permanently disabled as the result of a disease known as "echinococcosis." On October 16, 1936, he filed a petition in the district court for Douglas county, seeking to predicate a cause of action under the common law, charging the defendant corporation with negligence. His second amended petition, in substance, explanatory of the cause of action, follows:

At the time the plaintiff entered the employment of the defendant he was not informed by it, nor did he know, of the danger of infected meats and hides. No information as to protection for his health from the ravages of meat, infected with contagious or infectious disease, was given to the plaintiff or brought to his knowledge by the defendant. Therefore, during the months of May, June and July and during the whole year of 1933, the plaintiff gradually contracted a disease known as "echinococcosis." Said disease germs entered the plaintiff's system through the pores and skin of his hands and through his lungs. The disease germs were negligently and carelessly allowed to remain on meats which the plaintiff was handling in the regular course of his employment, and in the air of the room in which he was working. In this connection plaintiff alleges that such germs spread and developed and grew

in this plaintiff's system until December, 1935, when this plaintiff, as a result of the gradual contraction of said disease, became permanently and totally disabled; that this plaintiff contracted said echinococcosis, not as a result of any negligence on his part, but through the sole and proximate negligence on the part of defendant and its agents, in purchasing cattle which they knew, or, with the exercise of reasonable care, should have known, were infected with the disease; in negligently failing to discover that said cattle were so infected, and negligently failing to destroy and otherwise place said infected cattle in a position where the disease could not spread to this plaintiff; in failing to warn the plaintiff that such cattle were infected; in permitting plaintiff to unknowingly handle cattle which the defendant knew, or should have known, were infected with a dangerous and contagious disease; in failing to provide plaintiff with gloves or suitable apparatus which would protect him from the ravages of a dangerous and contagious disease, and in failing to provide ventilators, disinfectants or any other proper method of exterminating said disease.

To this petition the defendant demurred generally. The demurrer was sustained, and from this order plaintiff appeals, contending that such ruling constituted error.

The effect of a general demurrer was expressed by this court in the case of *Van Horn v. Lincoln Sales Outlet Co.,* 127 Neb. 301, 255 N. W. 36, as follows: "A demurrer is an admission of the truth of all facts properly averred in the pleading demurred to; it admits, however, only such facts as are well pleaded and all intendments and inferences that may fairly and reasonably be drawn therefrom."

The issue to be determined is: Does the plaintiff's second amended petition allege facts sufficient to constitute a cause of action at common law, charging the defendant with negligence? Having in mind the effect of a general demurrer, we direct our attention to the second amended petition. Our first inquiry is as to the nature of the disease known as "echinococcosis," which plaintiff alleges caused

his total and permanent disability. In this connection plaintiff alleges that he gradually contracted the disease known as echinococcosis; said disease germs entered this plaintiff's system through the pores and skin of his hands and through his lungs.

"Judicial notice will be taken of scientific facts which are universally known, and which may be found in encyclopedias, dictionaries, or other publications." 15 R. C. L. 1127, sec. 55. The plaintiff has used a scientific term which has a usual and ordinary meaning, capable of definition in standard dictionaries, medical dictionaries, encyclopedias, and accepted medical authority. We are not privileged to take cognizance of scientific matters of uncertainty or dispute, or of insufficient notoriety, even though learnedly discussed in scientific publications. We will, therefore, confine ourselves to the definition of the term "echinococcus" and the understandable, common and accepted conception of the disease.

In the case of *McCauley v. Imperial Woolen Co.*, 261 Pa. St. 312, 323, 104 Atl. 617, in speaking of the disease known as "anthrax," the court took judicial notice that it is a matter of general knowledge that such disease is primarily a disease of animals, "which may be transmitted to men when handling infected animal materials, like wool; it is caused by the entrance into the human body of anthrax bacilli, and their rapid multiplication and development."

In 23 C. J. 146, it is said: "Judicial notice is taken of the diseases to which men are subject, and in a general way of the causes or sources of such diseases, and the nature and effect of injuries, diseases, and physical defects, so far as they are matters of common knowledge."

In the case of *Richardson v. Greenberg*, 188 App. Div. 248, 176 N. Y. Supp. 651, the court said (p. 252): "It is a matter of common knowledge that the conditions generally prevailing in cases of infectious disease are caused by poisons or toxins exuded by living organisms or bacteria present within the human body;" and in such case Encyclopedia Britannica and other accredited authority were

resorted to. See *Sobol v. Sobol,* 88 Misc. 277, 150 N. Y. Supp. 248; *Janssen v. Mulder,* 232 Mich. 183, 205 N. W. 159.

In view of the foregoing holdings, we now turn to the following authorities defining echinococcus.

Webster's New International Dictionary (2d ed.) 1938, defines "echinococcus" as: "The cystic larval stage of a small tapeworm *(Taenia echinococcus)* : The adult infests the intestine of the dog; the larva develops in various tissues of cattle, sheep, swine, and man, being often fatal. The cyst or hydatid, formed by the larva, becomes very large and secondary cysts develop within it, from the walls of which tapeworm heads or scoleces grow. These, if eaten by a dog, may develop into adult worms." The same dictionary defines "cysticercus" as: "The larval form of certain species of tapeworms having the head and neck of a tapeworm attached to a sac-like body filled with fluid;— called also a *bladder worm, hydatid,* and *measle* (as, pork *measle).* These larvæ live in the tissues of various living animals, and, when swallowed by a suitable animal, develop into adult tapeworms in the intestine."

It is interesting to note that in Stitt's Practical Bacteriology, Blood Work and Animal Parasitology (5th ed.) p. 342, under "Taenia echinococcus," it is said:

"The adult stage of this parasite is passed in dogs. It is one of the smallest tape-worms known, being only about 1/6 inch long. It has a head with four suckers and a rostellum encircled with hooks. There are only three to four segments. The larval stage, on the contrary, gives one of the largest of larval cestodes. * * *

"The larval stage is also found in hogs and sheep, and it is probable that by reason of the dog's eating the echinococcus cyst of such animals at the abattoir we owe the increase in this serious infection.

"Man contracts the infection from association with dogs. * * * As stated above, the adult stage is passed in the intestine of the dog. Should the egg-bearing segments passed by the dog contaminate the hands of a man and a single

egg be ingested, we may have hundreds of *Taenia* larvæ produced."

In Wheeler's Handbook of Medicine, by Jack (6th ed.) p. 200, under "Life History," it is said: "When ripe the eggs set free from the intestine of the host—the dog or wolf—may be swallowed in drinking water or on vegetable food, and thus reach the stomach of man. There the embryos are liberated, perforate the intestinal walls, and getting into the circulation, are by this or other means carried to the liver or other organ, where they become encysted and develop a spherical vesicle which may reach a great size."

In 1 Clinical Diagnosis and Symptoms, by Martinet, p. 508, "echinococcus" is described as follows:

"Infection of man or mammals with this parasite takes place by the ingestion of ova (egg). The hexacanthic embryos, set free during the process of digestion, pass through the walls of the stomach or intestine and enter the blood vessels or lymphatics, whence they travel to various organs. * * *

"Echinococcus disease is transmitted to man and domestic animals by the dog, which harbors the mature tenia and sets free the ova with his excreta."

To like effect is Principles and Practices of Medicine, by Osler and McCrae (9th ed.) p. 296, wherein it is said: "In some countries man is an intermediate host, owing to accidental ingestion of the ova (egg). The little six-hooked embryo, freed from the egg-shell by digestion, burrows through the intestinal wall and reaches the peritoneal cavity or the muscles; it may enter the portal vessels and be carried to the liver. It may enter the systemic vessels, and, passing the pulmonary capillaries, as it is protoplasmic and elastic, may reach the brain or other parts. * * * It is not known definitely how long the echinococcus remains alive, probably many years, possibly as long as twenty years." The tenth edition of the foregoing work is more comprehensive, but reaffirms the same subject-matter. See Osler's Principles and Practice of Medicine, McCrae

(10th ed.) pp. 300, 301, 303. Other definitions to like effect are found in Dorland, American Illustrated Medical Dictionary (16th ed.) p. 435, and Encyclopedia Americana, 1937.

Having in mind the foregoing · definitions and a brief history of the disease of echinococcosis, we are impressed with the fact that it is an exceptional, unusual and rare disease. The definition of an occupational disease is adequately expressed by the authorities as follows:

In the case of *Glodenis v. American Brass Co.*, 118 Conn. 29, 170 Atl. 146, it was held that, to come within the definition of an occupational disease, "the disease must be one which is a natural incident of a particular occupation, and must attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of that attending employment in general." See *Industrial Commission v. Roth*, 98 Ohio St. 34, 120 N. E. 172; *General Printing Corporation v. Umback*, 100 Ind. App. 285, 195 N. E. 281.

It is therefore obvious that in his occupation as a beef washer plaintiff was not suffering from an occupational disease.

Much space is devoted in appellee's brief and in the reply brief of appellant to the proposition of whether or not the disease of echinococcosis, alleged to have been contracted by plaintiff, is an accident, within the meaning of the workmen's compensation law of this state. Comp. St. 1929, sec. 48-152; Comp. St. Supp. 1937, sec. 48-152. We are not directly confronted with that problem and will, therefore, not determine it. The plaintiff's theory of his alleged cause of action is based on the employer's duty to his employee as reflected by the following authorities, cited by plaintiff:

"It is the duty of a master to exercise reasonable care to protect his servants from exposure to contagious or infectious disease while in the performance of their work, and such duty, like that to provide a reasonably safe place and appliances, is absolute, and cannot be delegated. If it

requires an inspection, it is not performed by employing competent and skilled inspectors, but there must be, in fact, a reasonably careful and skilful inspection, and the master is responsible for an injury to a servant from a cause which such an inspection would have discovered and removed." *O'Connor v. Armour Packing Co.*, 158 Fed. 241, 85 C. C. A. 459.

In *Zajkowski v. American Steel & Wire Co.*, 258 Fed. 9, it was said: "It is the duty of the employer to warn and instruct the employee as to the dangers and to furnish him with reasonably effective means to avoid them, and where as the direct result of failure to perform this duty an employee in the exercise of reasonable care suffers injury through a disorder so contracted, he is entitled to recover." See *Wiseman v. Carter White Lead Co.*, 100 Neb. 584, 160 N. W. 985; *Pigeon v. Fuller & Co.*, 156 Cal. 691, 105 Pac. 976; *Thompson v. United Laboratories Co.*, 221 Mass. 276, 108 N. E. 1042, all to the same effect.

In *Stevens & Sons Co. v. Daigneault*, 4 Fed. (2d) 53, it was said: "It is well settled that a duty rests on an employer to warn his employees of defects or dangers not apparent which may arise in the course of the employment, which the employer knows or ought to know about, and which he has reason to believe the employee does not know and will not discover in time to protect himself. (Cases cited.) But failure to warn will not be regarded as negligence, unless the employer knew, or ought, in the exercise of reasonable and ordinary care and diligence, to have known, that a warning was necessary."

*Grammer v. Mid-Continent Petroleum Corporation*, 71 Fed. (2d) 38, expresses the duty of the employer as follows (p. 40): "An employer is not an insurer; his duty to furnish safe working conditions is not an absolute one, although it is nondelegable; his duty is to use reasonable care to that end. Ordinarily, fulfillment of that duty is established when it appears that the employer conformed to the common usages of the industry, for one cannot ordinarily be said to be negligent if he does that which ordinary

men, like situated, do." Cases further supporting this view are too numerous to cite, and such holding is quite universal. It is further said that the limit of the master's duty is to exercise ordinary care to supply reasonably safe places, appliances and methods; that the test of his discharge of this duty is the exercise of ordinary care as persons of ordinary intelligence and prudence commonly furnish in the circumstances.

The very essence of the plaintiff's cause of action is negligence. In cases of this kind, "Negligence rests primarily upon two elements: First, reason to anticipate injury; and, second, failure to perform the duty arising on account of that anticipation." Annotation, 4 A. L. R. 490.

A careful analysis of the plaintiff's second amended petition discloses that he had been in the employ of defendant as a beef washer from 1925, and had worked for a period of eight years thereafter, experiencing no difficulty with the disease of echinococcosis or illness therefrom, which strongly evidences that the defendant had no knowledge of, or reason to suspect with any degree of certainty, the development in its plant of this rare and unusual disease. No workman, other than the plaintiff, was affected in any manner with the disease. He fixes the time of contracting the infection in May, June, and July, and during the year of 1933, when, as he alleges, he gradually absorbed the disease through the pores and the skin of his hands and through his lungs, and he did not become totally and permanently disabled until 1935. Such allegations of the petition are conclusive of the consideration given to the disease by the plaintiff and reflect that he had little, if any, knowledge of it, or of the infection, or of its effects, until 1935.

In 39 C. J. 288, it is said: "The master is not compelled to foresee and guard against an accident which reasonable and prudent men would not expect to happen, and where an injury to a servant could not reasonably have been anticipated, a failure to take precautionary measures is not

negligence on the part of the master for which he is liable to the servant. But where the facts are such that the consequences attributable to the negligence of a master are within the field of *reasonable anticipation,* he is liable for an injury received by a servant in consequence thereof." (Italics ours.)

Our research fails to disclose a single case involving the disease known as echinococcosis, in connection with the occupation of the plaintiff, or with the industry of the defendant; nor does the plaintiff cite any such case.

The knowledge chargeable to the employer is stated in the case of *Canfield v. Iowa Dairy Separator Co.,* 172 Ia. 164, 154 N. W. 434, as follows: "Knowledge, actual or constructive, is an essential ingredient of negligence. Therefore, when the master carries on his business in the usual and ordinary manner, without knowledge that such manner is or may be dangerous to the servant, he is not liable for resultant injury to the servant." And the principle is stated in *Seefried v. Wangler Bros. Co.,* 164 N. W. 739 (181 Ia. 504), as follows: "The master is required to anticipate and foresee or guard against what usually happens or is likely to happen, and is not required to anticipate or foresee and guard against that which is unusual and not likely to happen, the test being whether the injurious result or consequence is probable or merely possible." See *Collins v. Pecos & N. T. R. Co.,* 110 Tex. 577, 212 S. W. 477; *Potter v. Richardson and Robbins Co.,* 6 Boyce (Del.) 314, 99 Atl. 540; *Yarbrough v. Wisconsin Lumber Co.,* 211 S. W. (Mo. App.) 713.

"Anticipation is applied in the determination of negligence vel non (or not). If no injury may be anticipated, no duty is breached by a failure to exercise care; but, if anticipated injury may result, then the duty arises." Annotation, 4 A. L. R. 490.

Are we to say, in considering the duty of the defendant (employer) towards the plaintiff (employee), that the defendant was guilty of negligence towards the plaintiff in failing to exercise reasonable care, in failing to use the

intelligence, ordinarily required in the industry, in furnishing a safe place to work and proper appliances, and in failing to warn the plaintiff? The very nature of the disease of echinococcosis and the manner in which it is contracted are indicative of the fact that an exceptional and unusual standard of care would be necessary on the part of the defendant industry to know or anticipate its existence, and such duty is not required of an employer. We repeat: Under the circumstances as pleaded by the plaintiff, is the disease one which can fairly and reasonably be charged to the knowledge of the defendant? There must be reasonable ground on which to charge the defendant with notice of the existence of the disease. Again referring to the definition of the disease, it is apparent that the term "echinococcus" refers to a parasite, which has its own life cycle, acquired by ingestion and not through the pores and the skin, and in extremely rare instances by inhalation. None of the cases cited by the plaintiff goes to the extent, as contended by him, of establishing a cause of action under the averments of the second amended petition.

Plaintiff's petition, wherein he seeks to allege a cause of action under the factory act and other provisions of the statute, set forth in his brief as follows: Sections 48-401, 48-403, Comp. St. 1929, under article 4 entitled "Health and Safety Regulations;" section 54-946, Comp. St. 1929, under article 9 entitled "Protection of Health of Domestic Animals;" and section 81-1501, Comp. St. 1929, under article 15 entitled "Sanitation of Premises Used for Manufacture or Preparation of Foods," is defective in failing to allege sufficient facts to show a violation of said sections.

For the reasons given in this opinion, we hold that the demurrer was properly sustained.

AFFIRMED.