KALEE *v.* DEWEY PRODUCTS COMPANY.

WORKMEN'S COMPENSATION—FINDING OF DEPARTMENT—EVIDENCE—
PROCESS—BURSITIS.

> Finding of department that plaintiff is suffering from bursitis
> due to an overuse of her shoulder in the course of her em-
> ployment by defendant while filling small bottles which un-
> questionably disables her and that the use of her shoulder was
> a continuous, necessary and integral part of the process in
> which she was employed, which is supported by evidence, *held,*
> sufficient to support award to plaintiff as the occupational
> disease amendment to the workmen's compensation act does
> not limit compensable bursitis to that occasioned by external
> causes (Act No. 10, pt. 7, §§ 1[c], 2, subd. 26, Pub. Acts 1912
> [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937).

CHANDLER, WIEST, and BUTZEL, JJ., dissenting.

Appeal from the Department of Labor and In-
dustry. Submitted October 23, 1940. (Docket No.
33, Calendar No. 41,238.) Decided March 11, 1941.

Lynne Kalee presented her claim against Dewey
Products Company and its insurer, American
Mutual Liability Company, for workmen's compen-
sation for bursitis. Award to plaintiff. Defend-
ants appeal. Affirmed.

*Arthur R. Sherk,* for plaintiff.

*Alexander, McCaslin & Cholette,* for defendants.

NORTH, J. From an award of compensation to
plaintiff, the defendant employer and the carrier of
its risk have appealed. Appellants concede that the
findings of fact by the department of labor and in-

dustry are sustained by competent testimony. The pertinent facts are so clearly and concisely stated in the opinion filed that we quote it in part:

"The plaintiff was employed by the defendant, Dewey Products Company, for a period of some nine years prior to June 23, 1939. Previous to the fall of 1938, her work consisted in the main of pouring medicine from a 16- or 32-ounce graduate into various size bottles which stood on a table and in pasting labels on the bottles. In doing this work the graduate from which she poured was held in her right hand. In the fall of 1938 her employer installed a machine to be used for the purpose of filling and labeling the bottles. With her right hand she placed the bottle on the conveyor which carried it to the machine to be labeled and after it was labeled she took it off with her left hand, meanwhile putting another bottle on the conveyor with her right hand. Sometime in 1935 she noticed that her right shoulder was sore and her husband occasionally rubbed it with liniment. In November of 1937 her right shoulder apparently felt worse and she consulted both an osteopath and a chiropractor and later a doctor of medicine, who advised her that she was suffering from bursitis in the shoulder. However, she continued working until June 23, 1939, at which time the condition of her right shoulder evidently had progressed to a point where she was unable to continue with her work.

"Plaintiff filed a notice and application for adjustment of claim under the occupational disease amendment on September 28, 1939, alleging total disability from bursitis of the right shoulder. * * *

"That plaintiff is suffering from a chronic or subacute bursitis in her right shoulder is not disputed, though there is some dispute in the medical testimony relative to the cause of the bursitis. There is ample testimony to establish that this condition is due to an overuse of the shoulder in her employ-

ment as heretofore detailed. Admittedly the bursitis was not caused by an external rubbing, pressure or vibration on the right shoulder. Dr. Harry Lieffers, plaintiff's physician, testified that there was a constant pressure, rubbing and friction within the shoulder itself and it was this internal rubbing and friction in the rotation of the arm which caused the bursitis. We are inclined to accept Dr. Lieffer's theory of the cause of the condition which unquestionably disables plaintiff in the employment in which she was engaged prior to June 23, 1939. * * *

"In the instant case, the work in which plaintiff was engaged was an integral part of the process. In that process it was as essential to have the medicines properly bottled and labeled as it was to have the ingredients properly mixed. The manner in which it was necessary for plaintiff to do her part of the process was as much an incident of her employment as was the work of those who compounded the medicine. In the performance of her duties in that process, namely, the manufacture of medicines for distribution and sale, she became disabled from bursitis as a result of 'continuous rubbing, pressure or vibrations of the parts affected.' Her disablement from bursitis dates from June 23, 1939."

The department awarded plaintiff compensation for total disability under the occupational disease provision of the amended statute, Act No. 10, pt. 7, § 2, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 8485-2, Stat. Ann. 1940 Cum. Supp. § 17.221), the relevant part of which reads:

"The disablement of an employee resulting from an occupational disease or condition described in the following schedule shall be treated as the happening of a personal injury by accident within the meaning of this act. * * *

"26. Disability arising from     Caused by
  bursitis or synovitis.         Any process involv-
                                 ing continuous rub-
                                 bing, pressure or
                                 vibrations of the
                                 parts affected."

Appellants' first contention is that bursitis which results from overuse of the shoulder by one while employed in the business of preparing medicines and drugs for sale to retail trade is not characteristic of and peculiar to that particular employment, and therefore is not compensable.

In this connection appellants quote the statutory definition of an occupational disease. It reads:

"The term 'occupational disease' means a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, *process* or employment." Act No. 10, pt. 7, § 1[c], Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 8485–1, Stat. Ann. 1940 Cum. Supp. § 17.220).

And in appellants' brief it is pointed out and relied upon that this Court in *Adams* v. *Acme White Lead & Color Works,* 182 Mich. 157 (L. R. A. 1916 A, 283, Ann. Cas. 1916 D, 689, 6 N. C. C. A. 482) adopted the definition of occupational disease as set forth in the Century dictionary. It is there defined as: "A disease arising from causes incident to a patient's occupation, as lead poisoning among painters." While the quoted dictionary definition may have been accurate for the purposes of the case in which it was used, still, in reviewing the instant case, it must be borne in mind that since decision was rendered in the cited case the legislature has placed its own definition of an occupational disease in the statute. It is quoted above; and clearly it is

broader than the definition found in the *Adams Case*. In that case "occupational disease" was confined to one "arising from causes incident to the patient's *occupation*." But under the statutory definition an occupational disease is one which is due to *causes* and *conditions* which are characteristic of and peculiar to a particular *"process,"* as well as those being peculiar to a given trade, occupation or employment.

There is testimony in this record that the "process" or method incident to plaintiff's performance of her duties as an employee (as detailed in the department's opinion) was the cause of the bursitis with which she became afflicted. And it is stated in the department's opinion: "It is significant that the legislature used the words 'any process' with no limitations whatsoever except that the process must involve constant or continuous rubbing, pressure or vibration of the parts affected." Counsel for the respective parties have cited numerous cases from other jurisdictions wherein attempts have been made to determine the meaning of the term "process;" but for varied reasons little help can be derived from these decisions in other jurisdictions. In some of the cases the right of action was under common law, rather than a statutory provision; in others, decision turned on a lack of testimony; and in still others the statutory provision involved differed materially from ours. In the brief of each of the parties there is cited the case of *Nielsen* v. *Firemen's Fund Indemnity Co.,* 239 App. Div. 239 (268 N. Y. Supp. 189). This case is entitled to more consideration than some others for the reason that the Michigan occupational disease statute is largely patterned after that of New York. Nielsen by reason of the nature of his employment as an investigator did an

excessive amount of walking. As a result a blister formed on one of his feet, broke and infection set in. In holding he was not entitled to compensation for an occupational disease the court said: "The statute covers only those caused by special enumerated hazards to which the employee is peculiarly subjected; it does not provide compensation for disease resulting from the general hazards and risks common to every individual, regardless of the nature of his employment." Obviously the New York court had in mind that excessive walking was not among the "special enumerated hazards." But on the contrary our statute does specifically enumerate as a hazard bursitis caused by rubbing, pressure, or vibration of the affected parts. Notwithstanding its denial of compensation, the New York court indicated a proper meaning to be given to the word "process" as used in its compensation statute. It said: " 'process,' as employed in the statute, denotes broadly the use and handling of implements and materials in industry, by the laborer in the performance of his task and by the artisan in the exercise of his skill in fabrication and craftsmanship."

We think the above definition of "process" is to say the least not objectionable, and that it covers the instant case.

In this connection it may be noted that in amplifying our compensation act the legislature amended the title by adding the recital that the act was one "providing compensation for the disability or death resulting from *occupational injuries* or disease." Whenever the body of an act contains a provision which is considered ambiguous there is much justification, when a construction is called for, in giving consideration to the title which the act bears. Doing so in the instant case leads to the conclusion that the term "occupational disease" as used in the body of

the act was intended by the legislature to be broadly interpreted, even to the extent of including what might more accurately be termed "occupational injuries." We think it is clear in this case that plaintiff did sustain an occupational injury or disease which resulted from the process or method in which she was required to perform her duties incident to her employment.

"Process" has a great variety of meanings. See Words and Phrases. In general it may be said that a "process" is an act or series of acts, or a mode of acting. As applied to the phase of the law now under consideration, we think "process" includes the mode of acting, which is regularly required of an employee in the accomplishment of his task. And in this case it was because of the process, mode, or method by which plaintiff was required to do her work that she became afflicted with bursitis. Under such circumstances it is a compensable disease within the terms of the statute.

Appellants' remaining contention is that, if disability arising from the bursitis is not caused by any rubbing or pressure applied *externally* by the process itself, but arises solely from an internal rubbing and pressure of the bones and bursa sac, it is not compensable under part 7, § 2, item 26, of the compensation act. See Act No. 10, pt. 7, § 2, subd. 26, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 8485–2, Stat. Ann. 1940 Cum. Supp. § 17.221).

Plaintiff's bursitis did not result from rubbing or pressure applied *externally*. Instead it resulted from internal conditions described by Doctor Lieffers as follows:

"The injury consists, according to my opinion, in a constant irritation and rubbing of the tendon generally of the superspenatis, by rubbing first of

this end of the tendon between the humerus. That is the original injury and that is the repeated injury. This tendon becomes frayed, and after the tissue dies, the calcareous deposit takes its place. In the meantime, the bursa, which is not as large as the hand, but only as large as the palm of the hand, is continually pinched between the rotating ligaments and the capsules.''

Appellants' contention in the respect just above noted is not tenable for the reason that the statute neither expressly nor impliedly limits compensation for bursitis to cases where the bursitis is caused by rubbing or pressure applied *externally.* We agree with appellee's brief wherein it is stated:

''To say that plaintiff cannot recover unless there was an external vibration or an external pressure or an external rubbing, is reading something into the statute that is not there. * * * That word 'external' was left out, and the courts cannot supply it.''

The award is affirmed. Costs to appellee.

Sharpe, C. J., and Bushnell and McAllister, JJ., concurred with North, J.

Boyles, J. (*concurring*). I concur in the conclusion reached by Mr. Justice North. The department has found the facts to be that plaintiff is suffering from bursitis due to an overuse of her shoulder in the course of her employment by defendant Dewey Products Company which unquestionably disables her in the employment in which she was engaged. The department has also found that the use of plaintiff's shoulder was a continuous, necessary and integral part of the process in which she was employed. There is sufficient medical testimony to serve as the basis for these findings. The occu-

pational disease amendment does not limit compensable bursitis to that occasioned by external causes. Gray's Attorneys' Textbook of Medicine (2d Ed. [1940]), p. 98, includes among the causes of bursitis "repeated motion involving abduction" as an activating factor.

BUTZEL, J. (*dissenting*). I cannot agree with the conclusion that plaintiff's condition is an occupational disease within the meaning of the statutory definition, Act No. 10, pt. 7, § 1(c), Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 8485–1, Stat. Ann. 1940 Cum. Supp. § 17.220). My Brother says that if there is any "internal rubbing and friction in the rotation of the arm," because of the duties performed, and bursitis results, compensation may be awarded because bursitis caused by any process involving "continuous rubbing, pressure or vibrations of the parts affected" is scheduled in section 2 of the act. But the statute does not say that because a disease or condition is scheduled in section 2 that it is compensable; section 2 states that disablement "resulting from an occupational disease or condition" described in the schedule may be treated as an accidental injury. The disease or condition described in the schedule must first come within the definition of "occupational disease" as stated in section 1 (c):

"The term 'occupational disease' means a disease which is due to *causes* and *conditions* which are *characteristic of and peculiar to a particular trade, occupation, process or employment.*"

The statement in the schedule, section 2, subd. 26 (Comp. Laws Supp. 1940, § 8485–2, Stat. Ann. 1940 Cum. Supp. § 17.221), as to the cause does not en-

large the definition of occupational disease, but rather puts a limitation on the definition of section 1 (c). I do not think that the bursitis in the instant case was due to "causes and conditions which are characteristic of and peculiar to" her employment.

There is no proof in the record, and our attention has not been called to any facts judicially known, to the effect that bursitis is a likely or common result of the kind of work plaintiff was doing. Her activities involved no strenuous exertions. She filled varying sizes of medicine bottles from a 16-fluid-ounce glass graduate, then moved the filled bottle 15 to 18 inches to a labelling machine. Before the installation of the machine, the labels were pasted on by hand. Her own physician testified that every time there is a shoulder movement there is caused a rubbing, and that there is "nothing unnatural" in rubbing or vibrations in the shoulder, but that in his opinion, she "overused the shoulder, used it too much."

Many occupations even of the most sedentary type require repeated movements with their concomitant flection of the joint, and yet the worker is not subjected to any greater likelihood of disorder in the joints "due to causes and conditions which are characteristic of and peculiar to" the activities than any individual who must move his limbs about in living or in general employment. As I understand my Brother's construction of the statute, there would be room for finding that bursitis developing in the shoulder joints of a cashier in a retail establishment is an occupational disease merely because the movements of taking in, registering, and then paying out moneys involve rubbing within the joints of the shoulder; it would seem that the same result would follow in the case of a telephone switchboard operator who is continuously inserting and withdrawing

the plugs which control line connections; it would mean that the seamstress who guides the cloth on which she is working through a sewing machine would likewise suffer an occupational disease; and a police officer who directs traffic would acquire bursitis as an occupational disease because of his hand movements. I could cite many other common instances of operations which involve continuous movements of a type that would not subject the worker to any peculiar hazards of disorder; I do not think it was intended that industry bear the burden of all bursitis occurring merely because there is use of the joint in the work, but that section 1 (c) in defining "occupational disease" limits the scope of coverage to a disease or condition "due to causes and conditions which are characteristic of and peculiar to" the tasks performed. Examples of types of bursitis which I think are truly "characteristic of and peculiar to" the occupation in which acquired are: bursitis in the shoulder of a hodcarrier; "housemaid's knee;" "tennis elbow;" bursitis caused by working with pneumatic drills or by vibrating machinery; bursitis in the shoulder of a plasterer who must constantly bear the weight of a heavy "hod" of plaster on one shoulder, et cetera. These examples are, of course, merely suggestive and not limiting of the possibilities.

In *Matter of Goldberg* v. *954 Marcy Corp.*, 276 N. Y. 313, 318, 319 (12 N. E. [2d] 311), it was said:

"Thus an occupational disease is one which results from the nature of the employment, and by nature is meant, not those conditions brought about by the failure of the employer to furnish a safe place to work, but conditions to which all employees of a class are subject, and which produce the disease as a natural incident of a particular occupation, and attach to that occupation a hazard which distinguishes it

from the usual run of occupations and is in excess of the hazard attending employment in general. Thus compensation is restricted to disease resulting from the ordinary and generally recognized risks incident to a particular employment, and usually from working therein over a somewhat extended period. Such disease is not the equivalent of a disease resulting from the general risks and hazards common to every individual regardless of the employment in which he is engaged.''

In *Nielsen* v. *Firemen's Fund Indemnity Co.*, 239 App. Div. 239 (268 N. Y. Supp. 189), it was pointed out that the statute covers only occupational diseases ''caused by special enumerated hazards to which the employee is peculiarly subjected,'' and that it does not compensate for disease ''resulting from the general hazards and risks common to every individual, regardless of the nature of his employment.''

In *Madeo* v. *Dibner & Bro.*, 121 Conn. 664, 667 (186 Atl. 616, 105 A. L. R. 1408), it was said:

''In *Glodenis* v. *American Brass Co.*, 118 Conn. 29, 40 (170 Atl. 146, 150), we pointed out that the definition did 'not require that a disease to be within the definition, should be one which arises solely out of the particular kind of employment in which the employee is engaged, nor that it should be due to causes in excess of the ordinary hazards of that particular kind of employment;' that the phrase 'peculiar to the occupation' was not 'used in the sense that the disease must be one which originates exclusively from the particular kind of employment in which the employee is engaged, but rather in the sense that the conditions of that employment must result in a hazard which distinguishes it in character from the general run of occupations;' and we said that, 'to come within the definition, an occupational disease must be a disease which is a natural incident of a particular occupation, and must attach to that

occupation a hazard which distinguishes it from the usual run of occupations and is in excess of that attending employment in general.' This definition requires that, to constitute an occupational disease, the disease must be a natural incident of a particular kind of employment, one which is likely to result from that employment because of its inherent nature. It does not include a disease which results from the peculiar conditions surrounding the employment of the claimant in a kind of work which would not from its nature be more likely to cause it than would other kinds of employment carried on under the same conditions.''

See, also, *Bollinger* v. *Wagaraw Building Supply Co.*, 122 N. J. Law, 512 (6 Atl. [2d] 316); *Industrial Commission* v. *Ule*, 97 Col. 253 (48 Pac. [2d] 803); *Maupin* v. *American Cigar Co.*, 229 Mo. App. 782 (84 S. W. [2d] 218); *Russo* v. *Swift & Co.*, 136 Neb. 406 (286 N. W. 291).

I do not think that bursitis is an occupational disease unless the occupation subjects the worker to a great hazard thereof than exists in the usual run of employment. The employment in the instant case did not bring about any hazard which would distinguish the tasks she performed from any other nonstrenuous employment and, therefore, her disability is not an occupational disease within the definition of section 1 (c).

The award should be vacated, with costs to defendant.

CHANDLER and WIEST, JJ., concurred with BUTZEL, J.