STRUBLE v DETROIT AUTOMOBILE INTER-INSURANCE
EXCHANGE

Docket No. 77-4250. Submitted June 12, 1978, at Grand Rapids.—
Decided October 3, 1978. Leave to appeal denied, 406 Mich —.

Plaintiff Juanita Struble, a housewife, was injured in an automobile accident. She sued her husband's insurer, defendant Detroit Automobile Inter-Insurance Exchange, for personal protection benefits claiming that as a result of her injuries she suffered a loss of earning capacity entitling her to benefits under the wage-loss section of the no-fault act. Defendant moved for summary judgment for failure to state a claim for which relief can be granted. The Berrien Circuit Court, William S. White, J., granted summary judgment. Plaintiff appeals. *Held:*

1. The section of the no-fault act allowing for compensation for loss of income does not extend to loss of earning capacity but applies only to work loss consisting of lost income from work that an injured person would have performed if no injury had occurred.

2. That section is not unconstitutional as being violative of equal protection.

Affirmed.

1. STATUTES—CONSTRUCTION—STATE LEGISLATURE—LEGISLATIVE
MEANING.

The Legislature must be held to intend the meaning which it has plainly expressed, and in such cases there is no room for construction or attempted interpretation to vary such meaning.

2. STATUTES—STATE LEGISLATURE—LEGISLATIVE POWER—ABROGATION
OF COMMON-LAW.

The Legislature possesses the right to extinguish a common-law measure of damages by appropriate language.

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes §§ 204-208.
[2] 73 Am Jur 2d, Statutes § 185.
[3, 7] Am Jur 2d, New Topic Service, No-Fault Insurance § 29.
[4] 16 Am Jur 2d, Constitutional Law §§ 335, 485-493.
[5] 16 Am Jur 2d, Constitutional Law § 488.

3. AUTOMOBILES—STATUTES—NO-FAULT ACT—WORK LOSS—LOSS OF EARNING CAPACITY.

The Legislature intended to provide damages for work loss only and not for loss of earning capacity in enacting the work loss section of the no-fault act (MCL 500.3107[b]; MSA 24.13107[b]).

4. CONSTITUTIONAL LAW—EQUAL PROTECTION.

Equal protection of the law requires that all persons subject to particular legislation be treated alike under like circumstances and conditions, but the guarantee of equal protection of the law is not one of equality of operation or application to all citizens of the state (US Const, Am XIV, Const 1963, art 1, §§ 1, 2).

5. CONSTITUTIONAL LAW—EQUAL PROTECTION—CLASSIFICATION.

The Equal Protection Clause precludes irrational discrimination as between persons or groups of persons in the incidence of a law but does not require situations which are different in fact or opinion to be treated in law as though they were the same and permits reasonable legislative classification based on substantial distinctions germane to the purpose of the law (US Const, Am XIV, Const 1963, art 1, § 2).

6. CONSTITUTIONAL LAW—FOURTEENTH AMENDMENT—EQUAL DISCRETION—AUTOMOBILES—STATUTES—NO-FAULT ACT.

The Legislature has wide discretion as to classification, and under the Fourteenth Amendment a distinction in legislation is not arbitrary if any state of facts can reasonably be conceived which would sustain it; therefore, the rule of equality permits many practical inequalities and what satisfies equality cannot be precisely defined; this test is applicable to Michigan's no-fault act (US Const, Am XIV; MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.).*

7. CONSTITUTIONAL LAW—EQUAL PROTECTION—AUTOMOBILES—STATUTES—NO-FAULT ACT.

The statute allowing compensation to those injured in automobile accidents for actual work loss and not for loss of earning capacity is not violative of the equal protection requirement of the Constitution (MCL 500.3107[b]; MSA 24.13107[b]).

*Sloan, Zarbock & Risdon* (by *William L. Benefiel),* for plaintiff.

*Butzbaugh, Page, Butzbaugh & Dewane,* for defendant.

Before: D. E. HOLBROOK, JR., P.J., and T. M. BURNS and W. VAN VALKENBURG,* JJ.

W. VAN VALKENBURG, J. New and complex legislation, such as 1972 PA 294, often provides a fertile breeding ground for interpretative litigation. The present case is illustrative of that situation as this Court is called upon to interpret the intention of the Legislature when it enacted MCL 500.3107(b); MSA 24.13107(b). That legislation reads in pertinent part as follows:

"Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he had not been injured and expenses not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he had not been injured, an injured person would have performed during the first 3 years after the date of the accident, not for income but for the benefit of himself or of his dependent."

The present controversy centers around the word "would" and its meaning in the context of that statute.

Plaintiff, a housewife, alleged in her complaint that she sustained disabling injuries as a result of an automobile accident on May 9, 1975. By virtue of an insurance policy issued by defendant to her husband, she claimed personal protection benefits as set forth therein.

She presented the following allegation in paragraph 6 of her complaint:

"As a result of the injuries sustained in the described accident, Plaintiff suffered a loss of earning capacity

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

entitling her to benefits under Sec. 3107 of the No-Fault Act, for wage loss benefits from the date of the accident for a period of three years."

Defendant filed a motion for summary judgment pursuant to GCR 1963, 117.2(1), on the ground that plaintiff had failed to state a claim upon which relief could be granted. Defendant's theory was that the statute provided no benefits for loss of earning capacity but only for work loss consisting of lost income from work that an injured person would have performed if no injury had occurred.

The trial court, after receiving the parties' briefs, granted defendant's motion, stating in part as follows:

"The court feels that the language of the statute is clear and unambiguous. It was the legislative's [sic] intent to provide benefits, only for actual work loss sustained. It must be presumed * * * that the legislature was fully cognizant of the law, case law, common law, court law, if you please, that existed in Michigan at the time that they enacted the no-fault statute."

Therefore, this issue is centered on the single question of whether the Legislature intended to include loss of earning capacity as a part of the benefits. The trial judge held that it did not. We agree.

First, we should note that the word "would" is the past tense of "will" and more particularly defined in *Safety Cab, Inc v Ferguson,* 137 Ind App 644, 651; 205 NE2d 827 (1965):

"The *Oxford English Dictionary,* Vol. XII, p. 137, meaning no. 42 defines the word 'would' as 'expressing merely a possibility or contingency in the supposed

case'. *Black's Law Dictionary,* 4th Ed., p. 1782, defines the word 'would' as 'a word sometimes expressing what might be expected. Often interchangeable with the word "should".' "

No definition of the word has been located in Michigan cases, but the Supreme Court in *Prince v Lott,* 369 Mich 606, 610; 120 NW2d 780 (1963), did infer that it would follow the usual meaning when it was held that:

"Defendants would not have been entitled to an instruction of the kind suggested had they requested it because the factor to be considered in determining such damages is not what plaintiff would have but what he could have earned but for the injury. It is the loss of earning capacity for which damages are to be awarded."

The law is well established that when the language of a statute is clear and unambiguous no interpretation need or can be made. *Jones v Grand Ledge Public Schools,* 349 Mich 1; 84 NW2d 327 (1957), *Acme Messenger Service Co v Unemployment Compensation Comm,* 306 Mich 704, 709; 11 NW2d 296 (1943), *Murray v Ferris,* 74 Mich App 91, 94; 253 NW2d 365 (1977); *Schigur v Secretary of State,* 73 Mich App 239, 243; 251 NW2d 567 (1977), *Gregory Boat Co v Detroit,* 37 Mich App 673, 676; 195 NW2d 290 (1972); *Collins v Motorists Mutual Ins Co,* 36 Mich App 424, 430; 194 NW2d 148 (1971).

An extension of that rule was promulgated by the Supreme Court in *MacQueen v City Comm of Port Huron,* 194 Mich 328, 342; 160 NW 627 (1916). There the Court held:

"It is a cardinal rule that the legislature must be held to intend the meaning which it has plainly expressed, and in such cases there is no room for con-

struction, or attempted interpretation to vary such meaning."

Further, plaintiff contends that the common-law tort rule should not be considered as abrogated unless there is a clear intent to do so. There is little argument about this principle. 73 Am Jur 2d, Statutes, § 181, p 384. However, plaintiff's reliance upon *Garwols v Bankers Trust Co,* 251 Mich 420, 427; 232 NW 239 (1930), is misplaced. There an illegitimate son, and sole heir, murdered his mother with the thought that he would inherit her estate and thereafter be able to marry a woman who had rejected him because of his poverty. The conclusion of the Court is self-explanatory:

"The omission to so foresee and to provide therefor cannot be presumed to work a repeal of the fundamental rule of the common law under which this murderer is disabled from inheriting. By so holding we are not grafting an exception into the statute by construction, but we are construing the statute according to the obvious intent of the legislature."

The law is clear that the Legislature possesses the right to extinguish the common-law measure of damages by appropriate language. "A statute which expressly extinguishes a common-law right is a proper exercise of legislative authority. *Bean v McFarland,* 280 Mich 19; 273 NW 332 (1937)." *Oole v Oosting,* 82 Mich App 291, 297; 266 NW2d 795 (1978).

This Court in *Shavers v Attorney General,* 65 Mich App 355, 366; 237 NW2d 325 (1975), *aff'd in part, rev'd in part,* 402 Mich 554; 267 NW2d 72 (1978), stated, "Common law remedies are not sacrosanct * * * and their replacement by other

means of redress is within the Legislature's prerogative". (Citations omitted).

The Supreme Court in *Boyer v Backus,* 282 Mich 701, 704; 280 NW 756 (1938), said, "[b]ut the common law does not remain in force if it appears that the rule has been changed by statute".

Further evidence of the Legislature's intent can be gleaned from the title of the act. *Kalee v Dewey Products Co,* 296 Mich 540, 545; 296 NW 826 (1941). The title of 1972 PA 294, reads in part: "An act * * * to modify tort liability arising out of certain accidents; to require security for losses arising out of certain accidents * * * ".

Additionally, the Legislature by the enactment of 1975 PA 311, being MCL 500.3107a; MSA 24.13107(1), which provides for payment to one temporarily unemployed on the basis of earned income during the last month in which he was working full time, clearly indicates that loss of earning capacity was not to be compensated.

The discussion in *Harper v Progressive Casualty Ins Co,* 79 Mich App 764, 766–767; 263 NW2d 1 (1977), is very helpful in determining the legislative intent. As explained therein, the Legislature must have been "familiar with the intention ascribed by the drafters" of the uniform motor vehicle accident reparation act, 13 Uniform Laws Annotated 358, 362, § 1(5)(ii) as § 3107(b) is copied almost verbatim therefrom. The drafters of the uniform act made known their intentions in no uncertain terms:

" 'Work loss', as are the other components of loss, is restricted to accrued loss, and thus covers only actual loss of earnings as contrasted to loss of earning capacity. Thus, an employed person suffers no work loss from injury until the time he would have been employed but

for his injury." 13 Uniform Laws Annotated 358, 362; comments to § 1(5)(ii) of the uniform act.

Finally, our decision in the present case is supported by this Court's decision in *Nawrocki v Hawkeye Security Ins Co,* 83 Mich App 135; 268 NW2d 317 (1978), which, while varying factually from the present case, comes to the same result.

Therefore, by virtue of the above definitions and the authorities hereinbefore cited, we conclude that the trial judge was correct in holding that the Legislature intended to provide damages for work loss only and not for loss of earning capacity.

Plaintiff next contends that the trial court's interpretation of MCL 500.3107(b); MSA 24.13107(b) denied her equal protection of the law under both the United States and Michigan Constitutions.

The equality of rights protected by our state constitution is the same as that protected and preserved by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Const 1963, art 1, §§ 1 and 2; US Const, Am XIV.

The purpose of the Equal Protection Clause of the Fourteenth Amendment is to secure every person within a state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by the express terms of a statute or by its improper execution by duly constituted agents. *Fox v Employment Security Comm,* 379 Mich 579, 588; 153 NW2d 644 (1967). Equal protection of the law requires that all persons subject to particular legislation be treated alike under like circumstances and conditions, but the guarantee of equal protection of the law is not one of equality of operation or application to all citizens of the state.

*Grayson v Board of Accountancy,* 27 Mich App 26, 31–32; 183 NW2d 424 (1970). The Equal Protection Clause precludes irrational discrimination as between persons or groups of persons in the incidence of a law but does not require situations which are different in fact or opinion to be treated in law as though they were the same. *Goesaert v Cleary,* 335 US 464; 69 S Ct 198; 93 L Ed 163 (1948).

Accordingly, equal protection of the law does not prevent, and is not violated by, a reasonable classification by legislative enactment if it applies alike to all persons within such class and reasonable grounds exist for making the distinction between those who fall within such class and those who do not. *People v Palazzolo,* 62 Mich App 140, 146; 233 NW2d 216 (1975). A classification must be based on substantial distinctions and be germane to the purpose of the law. *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 665–672; 232 NW2d 636 (1975), *Fox v Employment Security Comm, supra.*

The Legislature has wide discretion as to classification, and under the Fourteenth Amendment a distinction in legislation is not arbitrary if any state of facts can reasonably be conceived that would sustain it. Therefore, the rule of equality permits many practical inequalities and what satisfies equality cannot be precisely defined. *Goesaert v Cleary, supra.* A classification does not violate the Equal Protection Clause unless it is so lacking in an adequate or reasonable basis as to preclude an assumption that legislative discretion was exercised. *Kriger v South Oakland County Mutual Aid Pact,* 49 Mich App 7, 10–11; 211 NW2d 228 (1973), *rev'd on other grounds,* 399 Mich 835; 250 NW2d 67 (1977).

The United States Supreme Court has tradition-

ally applied two tests in determining the validity of legislation in equal protection cases. If the interest is "fundamental" or the classification is "suspect", a "strict scrutiny" test is applied requiring the state to show a compelling interest which justifies the classification. Other legislation, principally social and economic, is subjected to review under the traditional equal protection test discussed above. Under that test, the burden is on the person challenging the classification to show that it is without reasonable justification. *Manistee Bank & Trust Co v McGowan, supra.*

This two-tiered approach to equal protection analysis, which was developed in the 1960's, is still applied today. However, recent cases have not embraced the rigid attitude adopted by earlier cases toward the two-level approach, in which application of scrutiny that was "strict" in theory in fact proved fatal to the legislation in question and application of the traditional rational basis test with minimal scrutiny in theory meant no scrutiny in fact. Recently, a significant shift has taken place in the operation of equal protection law. A mounting discontent with the two-tier approach has been manifested in the Court. *Craig v Boren,* 429 US 190; 97 S Ct 451; 50 L Ed 2d 397 (1976).

This growing discontent has resulted in recent years in the adoption of an intermediate test which is applied in certain equal protection cases. Under this intermediate test, the classification must rest upon some ground of difference which has a fair and substantial relation to the object of the legislation. *Reed v Reed,* 404 US 71; 92 S Ct 251; 30 L Ed 2d 225 (1971), *Schigur v Secretary of State,* 73 Mich App 239, 245; 251 NW2d 567 (1977). The result is that the Court is less willing to

supply justifying rationales by exercising its imagination, as is the case when the rational basis test is applied, and more certain to assess the means in terms of legislative purposes that have substantial basis in actuality, not merely in conjecture.

In determining the constitutionality of § 3107(b) it is necessary to first determine the applicable equal protection test to be applied. In the present case, the classification made by the Legislature draws a distinction between those injured individuals who would suffer an actual work loss and those who would not. There is no "suspect" classification involved nor is there a "fundamental" interest. Therefore, the "strict scrutiny" test is inapplicable.

Since the no-fault legislation is new and still deemed experimental, the "fair-and-substantial-relation-to-the-object-of-the-legislation" test is not applicable, but instead the traditional equal protection analysis must be used. *Richardson v Belcher,* 404 US 78; 92 S Ct 254; 30 L Ed 2d 231 (1971), *Shavers v Attorney General,* 402 Mich 554; 267 NW2d 72 (1978), *Manistee Bank & Trust Co v McGowan, supra, Schigur v Secretary of State, supra, McKendrick v Petrucci,* 71 Mich App 200; 247 NW2d 349 (1976).

In applying the "rational basis" test, the inquiry has traditionally focused upon the character of the classification in question, the relative importance of the governmental benefits that they do not receive to the individuals in the class discriminated against, and the state interest asserted in support of the classification. *Massachusetts Bd of Retirement v Murgia,* 427 US 307; 96 S Ct 2562; 49 L Ed 2d 520 (1976). Here the state interest is to provide recovery to those persons who have sustained an actual wage loss resulting from an auto-

mobile accident and to allow for reduced insurance rates. There is a rational relation between the legislative objective and § 3107(b), even under the interpretation made by the trial court in the present case. Under that section, recovery is only allowed where it can be shown that there was an actual work loss.

It must be remembered that even though a legislative solution appears undesirable, unfair, unjust or inhumane, this in and of itself does not empower a court to override the Legislature and substitute its own solution. A legislative classification need not be drawn with mathematical nicety, and rough approximations will do. Statutes are cloaked with a presumption of constitutional validity and the burden of rebutting that presumption is on the person challenging the statute. *Manistee Bank & Trust Co v McGowan, supra, Schigur v Secretary of State, supra.* That presumption was not rebutted in the present case and § 3107(b) is, therefore, not unconstitutional.

It is further argued by plaintiff that the trial judge considered factual matters not set forth in the complaint in deciding the motion for summary judgment pursuant to GCR 1963, 117.2(1).

First, it should be noted that counsel for defendant, both in his brief and oral arguments, has vehemently denied that the trial court considered factual matters not contained within the complaint.

The rule is well settled that such a motion will be tested by the pleadings alone which must be considered as true. *Todd v Biglow,* 51 Mich App 346, 349; 214 NW2d 733 (1974).

Nevertheless, whether the statement in the judge's opinion that "the facts are clear" was inadvertently made or not is immaterial. Plaintiff

in paragraph 6 of her complaint merely alleges "a loss of earning capacity" and does not claim any damages for work loss.

Therefore, the trial court, having determined that the statute was clear and unambiguous and covered only loss of wages resulting from an automobile accident, was free to conclude that the complaint failed to state a claim upon which relief could be granted. Any possible reference to the facts under these circumstances would be harmless error. *Bostrom v Jennings,* 326 Mich 146, 158; 40 NW2d 97 (1949).

Affirmed. No costs, an interpretation of a statute being involved.