**ST. LOUIS MAILERS' UNION LOCAL NO. 3, Plaintiff,**

v.

**GLOBE–DEMOCRAT PUBLISHING COMPANY, a Missouri corporation, Defendant.**

**No. 63 C 290(2).**

United States District Court
E. D. Missouri, E. D.

June 12, 1964.

Jerome J. Duff and Joseph Howlett, St. Louis, Mo., for plaintiff.

Lon Hocker, St. Louis, Mo., for defendant.

MEREDITH, District Judge.

Plaintiff, a labor organization representing mail room employees, seeks damages for the alleged breach of its collective bargaining agreement with the St. Louis Newspaper Publishers' Association by one of the latter's two members, the defendant Globe-Democrat Publishing Company. The other member of the employer Association was the Pulitzer Publishing Company, publisher of the St. Louis Post-Dispatch. Plaintiff has moved for partial summary judgment on the issue of contract breach, leaving the extent and nature of damages for trial. Defendant denies the breach and defends on the further ground of res judicata. Defendant has moved for summary judgment on both grounds. The material facts necessary to decision are not in dispute.

The claim herein stems from the action of the defendant Globe in contracting and selling its physical properties to the Pulitzer Publishing Company. Pursuant to this contract and sale, the defendant Globe was printed and distributed by the Pulitzer Publishing Company, hereinafter sometimes referred to as the St. Louis Post-Dispatch.

Plaintiff seeks damages only to itself as a labor union and bases its claim exclusively on the alleged breach of Article I, Paragraph 3, of the collective bargaining agreement, in the failure of defendant to give it ninety-days notice before making the sale and contract with the Pulitzer Publishing Company. Jurisdiction is present under § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185. All individual rights of plaintiff's members, who were formerly employed by the defendant Globe were foreclosed and settled by virtue of Cause No. 23483–E, tried in the Circuit Court of the City of St. Louis, Missouri, which resulted in a judgment for plaintiffs therein (approximately sixty-two individual members of the plaintiff labor organization) on their claims for vacation pay and a judgment for defendant on plaintiff's claims for severance pay under the same collective bargaining agreement before us. That judgment was affirmed by the Supreme Court of Missouri, Monterosso, et al., v. Globe-Democrat Publishing Company, Mo., 368 S.W.2d 481, cert. den. 375 U.S. 908, 84 S.Ct. 198, 11 L.Ed.2d 147.

The collective bargaining agreement between plaintiff and the St. Louis Newspapers Publishers' Association, of which defendant Globe was a member, was in effect from August 15, 1958, to August 14, 1960. On February 21, 1959, a strike was begun at defendant's premises by another labor organization, the St. Louis Newspaper Guild, which set up a picket line that continued in effect until May 27, 1959. Plaintiff's members respected the Guild's picket line as they were permitted to do under their collective bargaining agreement, and none reported for work to the defendant from the time the Guild pickets appeared. All of the plaintiffs took employment elsewhere during the period from February 21,

1959, to June 1, 1959. Publication of the defendant Globe-Democrat was resumed on June 1, 1959, following the settlement of the Guild strike.

Most of plaintiff's members thereafter became employees of the St. Louis Post-Dispatch although the St. Louis Post-Dispatch was under no obligation to employ them. All such employees were treated as "new" employees at the St. Louis Post-Disptach and did not retain their severance and priority rights that had accumulated to them while employed by defendant.

On February 27, 1959, defendant and Pulitzer Publishing Company entered into a contract and executed a deed of conveyance of the building where defendant had formerly conducted its business. Defendant likewise executed a bill of sale to the bulk of its mechanical equipment, presses and machinery, including all the equipment used by plaintiff's members in their normal employment. On February 27, 1959, defendant's president and publisher called a meeting of representatives of all of the mechanical crafts, including plaintiff, and read to them a statement, a copy of which had been sent to each of defendant's employees. This statement disclosed the contract with the St. Louis Post-Dispatch for the printing of the defendant Globe and the consolidation of the two newspapers' mechanical operation, "when and if the Guild strike is settled". It was stated therein that "members of the mechanical unions will be employed on a priority basis in the consolidated mechanical operation. If they all cannot be employed, the dismissal provisions of the current mechanical contracts will apply." Sometime in May, plaintiff's members sought severance and vacation pay from defendant. Plaintiff represented its members in these negotiations and prosecuted their claims in the aforementioned state court proceedings, having agreed with defendant to waive the arbitration provisions of the collective bargaining agreement.

Article I of the collective bargaining agreement provides for plaintiff's jurisdiction of the mail room work of the two publishers. Plaintiff asserts that defendant breached Paragraph 3 which reads as follows:

"In the event of the introduction of any process, machinery, or equipment affecting mailing room work as herein defined not in use at the date this contract is effective or any such process, machinery or equipment used as an evolution of or substitute for current processes, machinery or equipment, the Publisher shall notify the Union of that fact, specifically describing it. Such notice shall be given at least ninety days before installation is to be made. The manner of operating the machines shall be determined by a joint committee representing the parties to the contract. Upon failure to agree upon the points involved, the matter shall be referred to arbitration as herein elsewhere provided. It is mutually agreed that in submitting this question to a fifth man, he shall be governed by the agreement of the parties that none but journeymen, as defined in this contract, shall be permitted to work on any such process, machinery or equipment, except as provided elsewhere in this agreement for the training of apprentices."

Plaintiff urges that the defendant's sale and contract for the printing and distribution of its paper by the St. Louis Post-Dispatch was a change of "process" within the meaning of the above paragraph requiring ninety days notice to plaintiff before the defendant entered into the contract and sale to the Post-Dispatch. Quite simply, in the ordinary everyday understanding of language, Paragraph 3 read as a whole, does not contemplate the event that gives rise to plaintiff's claim. While it seems obvious that the words "process, machinery or equipment" in the context in which that phrase is used refer only to types of

mechanical equipment employed for mail room work, any doubt as to that interpretation is plainly resolved by the subsequent statements:

"Such notice shall be given at least ninety days *before installation* is to be made. The manner of *operating the machines* shall be determined by a joint committee representing the parties to the contract." (Emphasis supplied.)

If the parties did not agree, the matter was to be referred to arbitration conditioned on the agreement that none but plaintiff's members "shall be permitted to work on any such process, machinery or equipment * * *." We conclude as a matter of law that the defendant's sale and contract with the St. Louis Post-Dispatch was not such a change in process, equipment or machinery contemplated by Paragraph 3 as requiring ninety days notice to plaintiff. Plaintiff urges that a contrary result is compelled by the well-established rules for interpreting labor agreements, citing United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers v. Warrior & Gulf Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed. 2d 1409; Textile Workers v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed. 2d 972; Local 174 Teamsters Local v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593; Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483. We recognize the general principles there enunciated for interpreting collective bargaining agreements in the fashioning of federal substantive law for the enforcement of labor agreements. Nonetheless, we think it equally clear that in each case the decision rests on the terms of the collective bargaining agreement, compare, for example, Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462, with Drake Bakeries v. Bakery Workers, 370 U.S. 254, 255, 82 S.Ct. 1346, 8 L.Ed.2d 474. As said in Atkinson v. Sinclair Refining Co., supra, 370 U.S. at 241, 82 S.Ct. at 1320:

"Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties. 'The Congress * * * has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 [80 S.Ct. 1347, 1353, 4 L.Ed. 2d 1409]. See also United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 570–571 [80 S.Ct. 1343, 1347, 4 L.Ed.2d 1403] (concurring opinion). We think it unquestionably clear that the contract here involved is not susceptible to a construction that the company was bound to arbitrate its claim for damages against the union for breach of the undertaking not to strike."

Of course, we are not instantly concerned with a breach of a promise to arbitrate, but rather with the alleged breach of a promise to give ninety-days notice before installation of a change of process, machinery or equipment affecting mail room work. Undoubtedly, the sale and contract under which the St. Louis Post-Dispatch would print and distribute defendant's newspaper affected mail room work, but we are unable to find in Paragraph 3 a promise that ninety days in advance of a sale of its property and a contract for its printing, defendant would give plaintiff notice of its intention. It is undoubtedly true that upon the happening of that event, plaintiff's members' rights under the agreement were arbitrable, but the parties waived arbitration and proceeded to litigate the issues in the state court and those questions are decided with finality.

Plaintiff states that the "obvious purpose of this contractual requirement (ninety days notice) was to allow plaintiff Union an opportunity to thoroughly study and prepare itself for any such change, or conversely, to allow the Union ample opportunity to object to and/or reject the employer's proposal. Had this ninety-days notice provision been complied with by defendant prior to the sale of the Globe building and hardware, there would not have been litigation arising out of this change in process.

■ "Throughout these past five years the differences of opinions between the employer and employees, asserting themselves through their Union, would have been resolved through the system of self-government built into the contract between these parties. The common law of the newspaper industry would have applied." This argument is self-defeating. Had the plaintiff timely sought to compel arbitration with respect to the meaning and interpretation of Paragraph 3 of the collective bargaining agreement, this Court would have so directed and the common law of the newspaper industry would have been applied by the arbitration board as provided for in the parties' contract. United Steelworkers v. Warrior & Gulf Nav. Co., supra. But here the parties waived arbitration of the individual employees rights under the agreement and litigated those issues in the state court. The amended petition on which the case in the state court was tried stated that every member of the plaintiff joined in the action and that the sixty-two plaintiffs brought their action individually and collectively. In the instant petition plaintiff alleges that it was compelled to bring and maintain the state court action on behalf of the employees affected. While it would appear that the principles of res judicata or the proscription against splitting a cause of action may well, on the basis of the state court action, be applicable to plaintiff's claim for damages to it as a union, we do not decide that issue because questions as to whether the union or individual members thereof might maintain an action under § 301 of the Labor Management Relations Act and on whether such actions may be heard in state court proceedings were, during the pendency of plaintiff's members' state court action, largely unresolved by the growing pains of fashioning federal substantive law. See for example Local 127, United Shoe Workers v. Brooks Shoe Mfg. Co., 3 Cir., 298 F.2d 277, and the district court decisions there affirmed, D.C., 187 F.Supp. 509 and D.C., 183 F.Supp. 568, together with United Shoe Workers of America, AFL–CIO, et al. v. Brooks Shoe Manufacturing Company, et al., D.C., 191 F.Supp. 288. The Supreme Court has now removed the "underpinnings" of Association of Westinghouse Salaried Employees v. Westinghouse Corp., 348 U.S. 437, 75 S.Ct. 488, 99 L.Ed. 510, which denied the right of the union to sue for the benefits inuring to its individual members. Smith v. Evening News Assn., 371 U.S. 195, 83 S. Ct. 267, 9 L.Ed.2d 246; General Drivers, Warehousemen & Helpers Local Union No. 89 v. Riss & Co., 372 U.S. 517, 83 S. Ct. 789, 9 L.Ed.2d 918. It has also now been determined that § 301 of the Labor Management Relations Act does not deprive state courts of jurisdiction to enforce collective bargaining agreements but requires them to apply federal labor law whether brought by the union or its individual members. Teamsters Local v. Lucas Flour Co., supra, and Dowd Box Co. v. Courtney, supra.

■ Even if the defendant's sale and printing contract were a change of "process, equipment, or machinery" within the contemplation of Paragraph 3, the ninety-days notice required is in advance of "installation" and even if "installation" is read as the date that the change is to be effected, there is nothing forbidding such installation, except that the parties would be bound by the arbitrator's decision on the question. On the instant facts, the sale and contract was announced on February 27, 1959. The changes envisioned thereby were to become effective "if and when the Guild strike is settled". The Guild strike end-

ed on June 1, 1959, some ninety days after the announcement. It is obvious plaintiff had ample opportunity to negotiate and arbitrate with respect to the rights of its individual members before the effective date. It did so negotiate and waived the arbitration provisions of the collective bargaining agreement and determined to litigate the issues. Therefore, even if Paragraph 3 were subject to the interpretation placed on it by plaintiff, defendant gave what turned out to be ninety-days notice and could not be said to have breached a contractual promise.

Plaintiff suggests that the Court consider the current N.L.R.B. attitude and policy in regard to the obligation of a company to bargain in subcontracting and plant shutdown decisions as reviewed and set forth in "The Duty to Bargain About Changes in Operations", Raymond Goetz, Duke Law Journal, Vol. 1964, Winter, No. 1.

▆▆▆ This very interesting article pertains to an analogous matter concerning the unilateral decision of an employer to subcontract work as an unfair labor practice under § 8(a) (5) and 8(d) of the National Labor Relations Act, 29 U.S.C.A. § 158, which has been committed to the jurisdiction of the National Labor Relations Board. This Court's jurisdiction is based upon the enforcement of the provisions of the collective bargaining agreement in the process of fashioning federal substantive law under § 301 of the Labor Management Relations Act. It is not the designated authority for determining statutory unfair labor practices. The same acts may give rise to both an unfair labor practice under § 8 of the National Labor Relations Act and to a claim for damages under § 301 of the Labor Management Relations Act without displacing or destroying the jurisdiction of either Court or Board:

"The authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301 * * *. If, as respondent strongly urges, there are situations in which serious problems will arise from both the courts and the Board having jurisdiction over acts which amount to an unfair labor practice, we shall face those cases when they arise." Smith v. Evening News Assn, 371 U.S. 195 at 197, 83 S.Ct. 267 at 269.

See also Teamsters Local v. Lucas Flour Co., supra, and Carey v. Westinghouse Corp., 375 U.S. 261, 84 S.Ct. 401, 11 L. Ed.2d 320.

Nonetheless, assuming that decisions reviewing N.L.R.B. orders should be employed in the present circumstances to imply a provision in a collective bargaining agreement where none in fact exists, an assumption we very much doubt because of different criteria for determining unfair labor practices, we turn to the 8th Circuit Court of Appeals in N. L. R. B. v. Adams Dairy, Inc., 322 F.2d 553, as controlling authority:

" * * * the decision on the part of Adams to terminate a phase of its business and distribute all of its products through independent contractors was not a required subject of collective bargaining. After that decision had been made, however, § 8(a) (5) did require negotiation with reference to the treatment of the employees who were terminated by the decision."

That decision does not lead to a contrary result or suggest that the Court supply a provision not contained in the agreement.

Plaintiff's motion for partial summary judgment will be denied. The motion of defendant for summary judgment will be sustained and judgment will issue for defendant.