**ST. LOUIS MAILERS' UNION LOCAL NO. 3, Appellant,**

v.

**GLOBE–DEMOCRAT PUBLISHING COMPANY, a Missouri Corporation, Appellee.**

**No. 17847.**

United States Court of Appeals Eighth Circuit.

Sept. 15, 1965.

Rehearing Denied Sept. 30, 1965.

Jerome J. Duff, St. Louis, Mo., for appellant.

Lon Hocker, of Hocker, Goodwin & MacGreevy, St. Louis, Mo., for appellee.

Before VOGEL and BLACKMUN, Circuit Judges, and REGISTER, District Judge.

BLACKMUN, Circuit Judge.

St. Louis Mailers' Union Local No. 3 is a union of mail room employees in the Saint Louis, Missouri, area affiliated with the International Typographical Union. For the two year period ending August 14, 1960, the Local was the exclusive bargaining agent for the mailer employees of the Globe-Democrat Publishing Company, publisher of the Saint Louis newspaper known as the Globe-Democrat. The Local instituted this action against Globe in the Eastern District of Missouri in August 1963. It was brought under § 301 of the Labor Management Relations Act, 1947, 29 U.S.C.

§ 185,[1] and rests upon a claimed violation of the bargaining agreement between the Local and St. Louis Newspaper Publishers' Association. Both compensatory and punitive damages are sought. The Association consists of the Globe and The Pulitzer Publishing Company, publisher of the Saint Louis newspaper known as the Post-Dispatch.

After Globe filed its answer both sides moved for summary judgment. The Local's motion was directed to the claimed breach of contract, with the determination of damages to be deferred for trial, as permitted by Rule 56(c), Fed.R.Civ. P. Globe's motion was on the theory that the facts showed no breach of contract and that principles of res judicata provided a barrier. Judge Meredith denied the Local's motion and sustained Globe's. His supporting memorandum is reported at 233 F.Supp. 529 (E.D.Mo. 1964). Judgment was entered accordingly.

Globe, for the first time in this litigation, now suggests that neither the complaint, as last amended, nor the record fulfills the requirements for district court jurisdiction set forth in § 301(c), 29 U.S.C. § 185(c), because it is not alleged or proved that the plaintiff Local maintains its principal office in the Eastern District of Missouri, or that its authorized officers or agents "are engaged" in representing or acting for employee members. It points out that the complaint was filed in August 1963 and that it alleges the Local's representation of employees only for a period prior to August 14, 1960; thus, it says, there is no allegation that, at the time the suit was filed, officers and agents of the Local were engaged in the District in representing employees.

The complaint as amended could have been more specific in its jurisdictional allegations. However, viewing the complaint in its entirety, we feel that the Local's Saint Louis principal office location was sufficiently asserted and without misunderstanding on Globe's part or prejudice to it. Further, looking at the statute's alternative language, we appreciate the fact that literally it speaks in terms of present representation by officers or agents. We are of the opinion, nevertheless, that it was not the intent of Congress to deny and take away jurisdiction over past contract violations at the moment representation ceases. We relate the language of the statute, instead, to representation at the time of the alleged contract violation. Accordingly, under both clause (1) and clause (2) of § 301(c), we uphold the district court's jurisdiction. Cf. International Ass'n of Machinists, etc. v. International Aircraft Services, Inc., 302 F.2d 808, 815–816 (4 Cir. 1962).

Apart from the secondary question of damages there is no genuine issue as to any material fact:

The bargaining agreement between the Local and the Publishers' Association was executed in December 1958 and was applicable to the period from August 15, 1958, through August 14, 1960. It recited the Association's recognition of the Local "as the exclusive bargaining representative of all employes covered by this contract". In the preamble the publishers agreed that no employe may be required to cross a picket line established

1. § 185. Suits by and against labor organizations—Venue, amount and citizenship

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter * * * may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

\* \* \* \* \*

(c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

\* \* \* \* \*

because of a strike when the line is authorized by the International. Article I was entitled "Jurisdiction". By it the publishers bound themselves to employ only journeymen and apprentices to perform all mail room work. A general description of this work was set forth. The contract then provided that mailers "shall do all of the work necessary in the ordinary maintenance, cleaning and operating adjustments of all machines in use in the mail room". Paragraph 3 of Article I then read in its entirety:

"3. In the event of the introduction of any process, machinery, or equipment affecting mailing room work as herein defined not in use at the date this contract is effective or any such process, machinery or equipment used as an evolution of or substitute for current processes, machinery or equipment, the Publisher shall notify the Union of that fact, specifically describing it. Such notice shall be given at least ninety days before installation is to be made. The manner of operating the machines shall be determined by a joint committee representing the parties to the contract. Upon failure to agree upon the points involved, the matter shall be referred to arbitration as herein elsewhere provided. It is mutually agreed that in submitting this question to a fifth man, he shall be governed by the agreement of the parties that none but journeymen, as defined in this contract, shall be permitted to work on any such process, machinery or equipment, except as provided elsewhere in this agreement for the training of apprentices."

Article III contained provisions for the "final and binding" arbitration of any dispute as to "the interpretation or enforcement of any of the provisions of this contract".

On February 21, 1959, the St. Louis Newspaper Guild, which was the bargaining representative for Globe's employees in editorial, business, and maintenance classifications, and which was separate and distinct from the plaintiff Local, struck Globe's plant and erected a picket line. The line remained until the Guild strike was settled about May 27. The Local's Globe members, as permitted by the bargaining agreement's preamble to which reference has been made above, refused to cross this picket line. They took employment elsewhere. The publication of the Globe-Democrat was resumed only on June 1, 1959.

On or before February 27, 1959, during the period covered by the bargaining agreement, Globe and Pulitzer, unknown to the Local, negotiated and entered into a contract. By this agreement Globe conveyed its building to Pulitzer and sold Pulitzer the bulk of its mechanical equipment, including all mail room equipment theretofore used by Globe and operated by the Local's members in the Globe plant. Thereafter, when Globe resumed publication, Pulitzer performed the printing and distribution of the Globe-Democrat and all of what was formerly Globe's mail room work.

On February 27, 1959, Globe's president called a meeting of representatives of all its mechanical crafts, including the plaintiff Local, and read them a statement disclosing the contract with Pulitzer and the consolidation of the mechanical operation of the two newspapers "when and if the Guild strike is settled". The statement also recited that, to the extent possible, "Members of the mechanical unions will be employed on a priority basis in the consolidated mechanical operation. If they all cannot be employed, the dismissal provisions of the current mechanical contracts will apply". A copy of this statement had been sent to each employee represented by the Local.

After February 27 the Local "froze" the "Priority Board" at the Post-Dispatch and members taking employment there remained in the capacity of extras and acquired no priority standing until sometime after June 1, 1959. Those former Globe employees who did not obtain positions with Pulitzer could have done so had they wished.

It is well at this point to note certain Missouri state court litigation which emerged from the same fact situation. The Globe members of the Local, waiving the arbitration provisions of the bargaining agreement, sued Globe in the Circuit Court of the City of Saint Louis for vacation pay and severance pay and for statutory penalties under V.A.M.S. § 290.090. The same counsel on both sides appeared in that case as in this one and the Local paid the expenses of the suit on behalf of its members. The state trial court entered judgment for the plaintiffs for vacation pay but denied their claims for severance compensation and for the statutory penalties. Globe did not appeal. The members did appeal from those portions of the judgment adverse to them. The Supreme Court of Missouri affirmed. Monterosso v. St. Louis Globe-Democrat Publishing Co., 368 S.W.2d 481 (Mo.Sup.1963), cert. denied 375 U.S. 908, 84 S.Ct. 198, 11 L.Ed.2d 147. The court held that there was no "consolidation" of the Globe and Pulitzer within the meaning of the severance pay provisions of the collective bargaining agreement.[2] Companion cases, decided the same day, concerned the rights of members of other unions to severance or dismissal pay under their respective bargaining agreements. Irwin v. Globe-Democrat Publishing Co., 368 S.W.2d 452 (Mo.Sup.1963), cert. denied 375 U.S. 908, 84 S.Ct. 198, 11 L.Ed. 2d 147; Allen v. Globe-Democrat Publishing Co., 368 S.W.2d 460 (Mo.Sup. 1963); and Ackerman v. Globe-Democrat Publishing Co., 368 S.W.2d 469 (Mo.Sup. 1963), cert. denied 375 U.S. 949, 84 S.Ct. 353, 11 L.Ed.2d 276. In each of those appeals the union members' respective claims were rejected.

We cite Monterosso and its companion state court cases to emphasize (a) the fact that the litigation presently before us does not concern individual rights of the Local's members and has to do with nothing more than the Local's own asserted claim as a union, and (b) the fact that any arbitration provision of paragraph 3 of Article I concerning members' rights was bypassed by the election of all Globe members to press their claims in state court litigation. The district court in its pretrial order observed, "The parties agreed and stated to the Court" that the "individual rights, under the collective bargaining agreement, of plaintiff's members who formerly were employed by defendant are forever foreclosed by the judgment in Monterosso. * * *" The present suit was instituted only after the Supreme Court of Missouri had decided the Monterosso case.

The Local's sole contention, as the case now comes to us, is that the Globe-Pulitzer agreement amounted to the introduction of a "process" affecting mail room work, within the meaning of Article I, paragraph 3, of the bargaining agreement; that, under that contract, this change necessitated 90 days' advance notice to the Local; that such notice was not given; and that the failure to give it constituted a breach of the agreement as a matter of law and entitled the Local

2. We venture no opinion as to the outcome of this severance and vacation pay case had the plaintiffs not waived arbitration or had Globe questioned the jurisdiction of the Missouri court and had it not failed to suggest the existence of a federal standard before its motion for rehearing to the Missouri Supreme Court, p. 489–490 of 368 S.W.2d. See Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). Globe, however, did not raise the issue and did not appeal and, as the district court in the present litigation stated in its pretrial order, "The parties agreed at the time this dispute [Monterosso] arose to waive the arbitration of provisions of the collective bargaining agreement". Inasmuch as the duty to arbitrate is a matter of contract and the parties may exclude a subject from the reach of arbitration, Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), a right to arbitrate may certainly be waived by the parties. Armstrong-Norwalk Rubber Corp. v. Local Union No. 283, United Rubber Workers, 167 F. Supp. 817, 819 (D.Conn.1958), appeal dismissed, 269 F.2d 618 (2 Cir. 1959).

to damages. It is said that when Globe arranged for Pulitzer to print and distribute the Globe-Democrat, Globe no longer controlled any processes of its mail room; that, indeed, it resulted in a total abandonment of all such processes; and that the change was certainly an "introduction" of a process or an "evolution of or substitute for current processes".

This argument is not an illogical one. It does not persuade us, however, for the following reasons:

1. The term "process", as employed in the bargaining agreement, does not strike us as one which was intended by the parties to embrace the fact situation present here. The word itself, of course, is broad and not specific. It possesses and is capable of many meanings. A glance at any dictionary, law or general, discloses this. See, also, 34 Words and Phrases, "Process", pp. 225–233 (1957). Three cases cited to us by the Local also demonstrate the word's capacity: Kalee v. Dewey Products Co., 296 Mich. 540, 296 N.W. 826, 827–828 (1941); Nielsen v. Firemen's Fund Indem. Co., 239 App. Div. 239, 268 N.Y.S. 189, 191 (1933); and Bedford v. Colorado Fuel & Iron Corp., 102 Colo. 538, 81 P.2d 752, 757 (1938), where the court quoted from Cochrane v. Deener, 94 U.S. 780, 788, 24 L.Ed. 139 (1876). But the word "process" here appears no less than four times in paragraph 3 and each time it is coupled with "machinery or equipment". We relate the word, as did the district court, pp. 531–532 of 233 F.Supp., not to every conceivable mode of acting, but, instead, only "to types of mechanical equipment employed for mail room work". What the parties contemplated were changes and substitutions in operating procedures which would affect the nature and method of the mailer employees' work. Nothing of this kind is involved here.

2. We also join Judge Meredith in being impressed by the fact that paragraph 3, in its reference to notice, speaks of "before installation" and of "the introduction of any process". These phrases are directed to continuing activity and to changes in working and operating conditions and not to a cessation of mailing room function. Further, the phrase does not relate to the 90 days before arriving at a decision; it concerns only the 90 days before installation.

3. Paragraph 3 is a part of that article of the bargaining agreement which has to do with the Local's jurisdiction, that is, the retention of all Globe's mailing room work for the Local's own members. The first two paragraphs of Article I clearly reveal the union's concern as to this and the parties' intent that the work in the Globe mailing room, even including ordinary maintenance, cleaning and operating adjustments, be restricted to members of the Local. Paragraph 3 speaks of "evolution of or substitute for current processes, machinery or equipment". Arbitration is to govern "the manner of operating the machines". And the paragraph concludes with the seemingly redundant provision that even the fifth arbitrator shall bear in mind that only journeymen shall be permitted to work on the process. All this emphasizes that the parties were primarily concerned with the retention of the Local's jurisdiction over the mail room.

4. After the effectuation of the Globe-Pulitzer agreement, mail room jurisdiction was still preserved for the Local. It lost nothing jurisdictionally, for Pulitzer as well as Globe was a member of the Publishers' Association, the employer party to the bargaining agreement, and the employee who now worked for Pulitzer had the benefits of the very same bargaining agreement.

■  We therefore conclude that paragraph 3 of Article I and its 90 day notice provision do not have application to the fact situation here.

■  However, even if we are not correct in the foregoing conclusion, the Local encounters the barriers of the actual existence of 90 days' notice to it and its inaction after that notice. On February 27, 1959, Globe's president called the meeting with representatives of the

Local and of all other mechanical crafts. These representatives, as the Local concedes, were then advised of the deal with Pulitzer, of Pulitzer's forthcoming printing of the Globe-Democrat, and of the consolidation of the mechanical operations when the Guild strike was settled. This settlement was effected at the end of May and Globe resumed publication June 1. The ninetieth day after February 27 was May 28. Thus, more than 90 days elapsed between the February meeting and the resumption of publication. During that entire period the plaintiff Local did nothing about activating a joint committee of the kind contemplated by paragraph 3.

The union would overcome these facts by arguing that, under Fibreboard Paper Products Corp. v. NLRB, 379 U.S. 203, 216, 85 S.Ct. 398, 13 L.Ed.2d 233, footnote 10 (1964), the 90 day notice must be given before the accomplished fact of the Globe-Pulitzer agreement, and that, without such anticipatory notice, Globe assumed the risk of the status quo ante being forceably restored. But Fibreboard, and our own case of NLRB v. Adams Dairy, Inc., 322 F.2d 553 (8 Cir. 1963), certiorari granted and case remanded for reconsideration in the light of Fibreboard, 379 U.S. 644, 85 S.Ct. 613, 13 L.Ed.2d 550 (1965), decision reaffirmed, 350 F.2d 108 (8 Cir. 1965), concerned the unfair labor practice aspect of a decision to contract out work. This appeal, as the Local itself characterizes it, is limited "to the issue of contract breach". There is no unfair labor practice issue before us. See Fibreboard Paper Prod. Corp. v. East Bay Union of Machinists, 344 F.2d 300, 304 (9 Cir. 1965).

We are not unaware of the developing emphasis on arbitration as a stabilizing factor in effectuating national labor policy. In Bonnot v. Congress of Independent Unions, 331 F.2d 355, 357–358 (8 Cir. 1964), we observed this and cited and reviewed United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960) its companion cases, and many others.

To that list may now be added Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) and Minnesota Joint Bd., Amalgamated Clothing Workers, etc. v. United Garment Mfg. Co., 338 F.2d 195 (8 Cir. 1964). The basic question is the meaning and intent of the contract. That question is resolved here adversely to the Local's contentions.

This makes it unnecessary for us to pass upon the further point raised by Globe, namely, that the plaintiffs in Monterosso and the plaintiff in the present action are, in effect, identical or, if not, that the Local participated in the state court action so that, in either event, the present suit is barred by principles of res judicata and election of remedies.

Affirmed.