The **TRUSTEES OF COLUMBIA UNIVERSITY IN the CITY OF NEW YORK, Plaintiff,**

v.

**LOCAL 1199, DRUG, HOSPITAL AND HEALTH CARE EMPLOYEES UNION, RWDSU, AFL–CIO, Defendant.**

No. 92 Civ. 1222 (MGC).

United States District Court, S.D. New York.

Nov. 5, 1992.

Putney, Twombly, Hall & Hirson, Trustees of Columbia University in City of New York, New York City by Michael T. McGrath, Joseph R. Parauda, Craig M. Bonnist, for plaintiff.

Eisner, Levy, Pollack & Ratner, P.C., New York City by Daniel J. Ratner, Christopher Hull, Law Student, for defendant Local 1199, Drug, Hosp. and Health Care Employees Union, RWDSU, AFL–CIO.

## OPINION AND ORDER

CEDARBAUM, District Judge.

Plaintiff The Trustees of Columbia University ("Columbia") sues Local 1199, Drug, Hospital and Health Care Employees Union, RWDSU, AFL–CIO ("Local 1199"), a labor organization in New York City, for breach of a no-strike clause in their collective bargaining agreement. Local 1199 moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (6) on the ground that Columbia is precluded from litigating its dispute with the Union in court because in the collective bargaining agreement the parties have designated arbitration as the exclusive means of resolving disputes. Local 1199 also moves for sanctions against Columbia pursuant to Fed.R.Civ.P. 11. For the reasons discussed below, defendant's motion to dismiss the complaint is granted, and defendant's motion for Rule 11 sanctions is denied.

Local 1199 represents approximately 500 employees of Columbia under a collective bargaining agreement that is effective from January 1, 1990 through December 31, 1992 ("the Agreement"). Columbia alleges that on November 14, 1991, its Local 1199 employees engaged in a strike in violation of the Agreement's no-strike clause. (Ratner Aff., Ex. A, ¶ 7.) Columbia filed this suit for damages and injunctive relief pursuant to Section 301 of the Labor Man-

agement Relations Act, 29 U.S.C. § 185(a) (1947).

The pertinent language of the Agreement provides as follows:

## ARTICLE XXIX

### GRIEVANCE PROCEDURE

1. A grievance shall be defined as a dispute or complaint arising between the parties hereto under or out of this Agreement or the interpretation, application, performance, termination, or any alleged breach thereof, and shall be processed and disposed of in the following manner:

*Step 1.*

Within a reasonable time (except as provided in Article XXVII), an Employee having a grievance and/or his/her Union Delegate or other representative shall take it up with his/her immediate supervisor. The employer shall give its answer to the Employee and/or his/her Union Delegate or other representative within five (5) working days after the presentation of the grievance.

*Step 2.*

If the grievance is not settled in Step 1, the grievance may, within five (5) working days after the answer in Step 1, be presented in Step 2. When grievances are presented in Step 2, they shall be reduced to writing indicating the facts and nature of the grievance; signed by the grievant and his/her Union's representative, and presented to the grievant's department head or his/her designee. A grievance so presented in Step 2 shall be answered by the Department Head in writing within five (5) working days after its presentation.

*Step 3.*

If the grievance is not settled in Step 2, the grievance may, within five (5) working days after the answer in Step 2, be presented in Step 3. A grievance shall be presented in this step to the Director of Employee Relations or his/her representative and the Director of Employee Relations or his/her representative shall render a decision in writing within five

(5) working days after the presentation of the grievance in this step ...

2. (c) Without waiving its statutory rights, a grievance on behalf of the Employer may be presented initially in Step 3 by notice in writing addressed to the Union at its offices ...

3. Any disposition of a grievance from which no appeal is taken within the time limits specified herein shall be deemed resolved and shall not thereafter be considered subject to the grievance and arbitration provisions of this Agreement ...

## ARTICLE XXX

### ARBITRATION

1. A grievance, as defined in Article XXIX, which has not been resolved thereunder may, within fifteen (15) working days after completion of Step 3 of the grievance procedure, be referred for arbitration by the Employer or the Union to an arbitrator selected in accordance with the procedures of the American Arbitration Association. The arbitration shall be conducted under the Voluntary Labor Arbitration Rules then prevailing of the American Arbitration Association ...

3. The award of the arbitrator hereunder shall be final, conclusive and binding upon the employer, the Union and the Employees.

(Pl's Mem. at 5–7.)

Columbia concedes that if the parties agreed to resolve their dispute by arbitration, this court should decline to exercise jurisdiction over the action. The issue raised by defendant's motion is whether the Agreement requires the parties to resolve all grievances by arbitration, as Local 1199 contends, or only employee grievances against the employer, as Columbia contends.

### Defendant's Motion to Dismiss

██ Federal labor law does not require parties to arbitrate claims of breach of a collective bargaining agreement. Rather, "arbitration is a matter of contract and a party cannot be required to submit to

arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Therefore, the issue of arbitrability is "a matter to be determined by the Court on the basis of the contract entered into by the parties." *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962).

■ Columbia argues that the arbitration clause in the Agreement does not bind the employer to submit its grievances to arbitration because the grievance procedure in the Agreement is "employee oriented," that is, designed to resolve employee grievances against the employer. According to Columbia, the arbitration clause incorporates an employee oriented definition of grievance, and therefore does not apply to employer grievances. Under that construction of the Agreement, only employee grievances must be referred for arbitration.

Where grievance procedures are designed to resolve only employee grievances against the employer, and neither implicitly nor explicitly provide for arbitration of the employer's claims against its employees, courts have held that the presence of an arbitration clause does not bind the employer to submit its claims to arbitration. *Friedrich v. Local No. 780*, 515 F.2d 225 (5th Cir.1975); *Faultless Div. v. Local Lodge No. 2040, International Ass'n of Machinists*, 513 F.2d 987 (7th Cir.1975); *Boeing Co. v. International Union, UAW*, 370 F.2d 969 (3d Cir.1967). In each of these cases, the court determined that the grievance procedure in the collective bargaining agreement provided only for resolution of employee grievances against the employer. Therefore, despite the presence of an arbitration clause, the agreements were not susceptible of a construction that the employer was bound to arbitrate its grievances against its employees.

While the collective bargaining agreement at issue in *Friedrich* contained a provision which could have been read to allow the employer to present grievances against the Union, the court determined that the grievance procedure was wholly employee oriented. There, the collective bargaining agreement provided that "[g]roup grievances, grievances of a general nature, discharges or disciplinary layoffs, may be raised, initially by either party at Step 3 of the grievance procedure." *Friedrich*, 515 F.2d at 230. The court concluded that since this language referred back to a step of the grievance procedure which on its face could only involve employee disputes, this language did not convert the grievance procedure into one in which employer, as well as employee, disputes could be presented. *Id.*

The grievance procedure in the Agreement is distinguishable from the grievance procedures described as "employee oriented" in the cases cited above. It is not wholly employee oriented since the Agreement expressly provides, as Columbia concedes, that Columbia may present grievances against the Union. Article XXIX, paragraph 2(c) provides that:

> Without waiving its statutory rights, a grievance on behalf of the Employer may be presented initially in Step 3 by notice in writing addressed to the Union at its offices.

(Pl's Mem. at 6.)

In contrast to *Friedrich*, this provision not only permits the employer to present its grievances against the Union, but also modifies the grievance procedure to accommodate employer grievances. Employer grievances presented in Step 3 are presented to the Union rather than a representative of the employer. Under the most reasonable interpretation of this language, the Union would then render a decision regarding the grievance. Because the employer is permitted to present its grievances and the grievance procedure is modified to accommodate these grievances, the provision converts the grievance procedure into one which applies to both employer and employee grievances.

Thus, the language of the Agreement does not support Columbia's claim that the grievance procedure is employee oriented. Accordingly, the general rule that where a

grievance procedure accommodates only employee disputes against the employer, an arbitration clause is limited to employee grievances is not applicable to Columbia's agreement with Local 1199.

■ Columbia argues next that although it has the option of submitting its grievances to arbitration, it cannot be compelled to do so. As support for this proposition, Columbia relies solely on the clause in which it reserves its statutory rights. During oral argument, Columbia stated that "[i]n the absence of that clause as far as we are concerned it would be a mutual arbitration grievance procedure." (Tr. at 12.)

Columbia argues that it reserved the right to sue for breach of contract. However, in the Agreement Columbia did not reserve the specific right to sue for breach of contract, but rather reserved its general statutory rights. Article XXIX of the Agreement provides that "[w]ithout waiving its statutory rights, a grievance on behalf of the Employer may be presented initially in Step 3 ..." (Pl's Mem. at 6.) Columbia contends that the statutory right reserved is the right to prosecute its claims in court, and that this reservation renders arbitration of its claims against the Union permissive rather than mandatory. Local 1199 assigns a different meaning to Columbia's reservation of statutory rights. Local 1199 argues that the right Columbia reserved is not the right to litigate breaches of the Agreement, but rather the right to file unfair labor practices before the National Labor Relations Board. Disputes between unions and employers may involve actions which are both breaches of collective bargaining agreements and unfair labor practices under Section 8 of the National Labor Relations Act, 29 U.S.C. § 158 (1959). *St. Louis Mailers' Union Local 3 v. Globe–Democrat Publishing Co.,* 233 F.Supp. 529 (E.D.Mo.1964), *aff'd* 350 F.2d 879 (8th Cir.1965), *cert. denied,* 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470 (1966). Local 1199 contends that Columbia may pursue both breach of contract claims and unfair labor practices claims arising from the same acts, but the breach of contract claims must be resolved by arbitration.

Both parties can offer plausible explanations of the meaning of Columbia's reservation of statutory rights because the language used is ambiguous. Indeed, during oral argument Columbia admitted that the meaning of the clause in which it reserved its statutory rights is unclear. (Tr. at 18.) The Supreme Court has instructed that doubts as to whether a dispute is arbitrable are to be resolved in favor of arbitration:

> [T]o be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration ... [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Because of the ambiguity of the language on which Columbia relies, it may not be said with "positive assurance" that the arbitration clause in the Agreement is not susceptible of an interpretation that covers Columbia's claim against the Union. Thus, doubt should be resolved in favor of coverage.

■ Finally, Columbia argues that if the court should determine that it has agreed to submit its claim to arbitration, a stay rather than dismissal is the appropriate remedy. Columbia contends that because it reserved its statutory rights, any resolution by the arbitrator against it would not be final since it would have the "absolute right to return to this Court." (Pl's Mem. at 16.) Therefore, dismissal and refiling should not be required when a stay of the action would achieve the same result.

This argument is inconsistent with the language of the Agreement. Article XXX, paragraph 3 provides that "[t]he award of the arbitrator hereunder shall be final, conclusive and binding upon the employer, the Union and the Employees." (*Id.* at 7.) Moreover, this argument is inconsistent

with the determination that Columbia did not reserve the right to prosecute this claim in court, but rather agreed to submit it to arbitration. While circumstances may justify a stay pending arbitration rather than outright dismissal, Columbia has not identified any such circumstances in this case. Therefore, Columbia's request that the action be stayed is denied.

### Defendant's Motion Under Rule 11

■ Defendant also moves for sanctions against plaintiff pursuant to Fed.R.Civ.P. 11 for asserting frivolous claims. In order for a position "to constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands. [N]ot all unsuccessful legal arguments are frivolous or warrant sanction." *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991) (citations omitted). Columbia's argument that it is not bound to arbitrate its claim against the Union was supported by a colorable interpretation of the Agreement, and therefore was not frivolous. Accordingly, Local 1199's motion for sanctions is denied.

### CONCLUSION

For the reasons discussed above, Local 1199's motion to dismiss the complaint is granted, and Local 1199's motion for Rule 11 sanctions is denied.

SO ORDERED.